KALB et al., Appellants,

v.

MOREHEAD et al., Appellees.

RATLIFF et al., Appellants,

v.

MOREHEAD et al., Appellees.

[Cite as *Kalb v. Morehead* (1995), 100 Ohio App.3d 696.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

Nos. 93 CA 2178 and 93 CA 2179.

Decided Jan. 26, 1995.

*William K. Shaw, Jr.,* for appellants.

*Robert E. Dever,* for appellees.

GREY, Judge.

This appeal involves two cases in which summary judgment was granted by the Common Pleas Court of Scioto County. These cases demonstrate the failure of discovery. Plaintiffs-appellants filed overbroad requests for discovery. Defendants filed for overbroad protective orders. The trial court, without deciding what was legitimately discoverable and what was not, put on overbroad protective

orders without giving any reason for doing so. Summary judgment was then granted and appellants took this appeal. We reverse, so that the rules of discovery can be complied with by everyone.

The facts in both cases are relatively simple. Kalb had an appendectomy. Ratliff had a right femoral-popliteal bypass. Complications arose and both parties sued their surgeon, Dr. Morehead, for malpractice. They also sued the hospital under a theory of negligent credentialing, *i.e.*, the hospital negligently retained Morehead when it knew he was incompetent.

The facts pertinent to case No. 93 CA 2178, 1995 WL 34795, *Kalb,* are as follows. On the morning of May 17, 1990, Kalb went to his family physician complaining of abdominal pain. His doctor, Dr. Collins, diagnosed the problem as appendicitis and sent Kalb to the emergency room of Scioto Memorial. When Kalb arrived, Dr. Morehead was summoned and he performed an emergency appendectomy. After the surgery, the abdominal pain continued and Kalb's temperature and blood pressure increased. There was some internal bleeding and, on May 24, 1992, a second surgery was performed. The pain continued and a third operation was necessary. He continues to have pain and it appears more surgery will be required.

The facts pertinent to case No. 93 CA 2179, *Ratliff,* are as follows. On September 7, 1990, Dr. Morehead performed a right femoral-popliteal bypass on Ratliff. Before the operation, Morehead told Ratliff he was going to use the saphenous vein from his lower right leg for the bypass operation. After the operation, Morehead told Ratliff he used the vein to complete the graft. Morehead did not use the vein, but instead used Gortex, a manmade material. The procedure failed in less than four weeks, and Ratliff alleges his condition was worse than before the operation.

Kalb and Ratliff sued Morehead under a theory of medical malpractice and sued Scioto Memorial, *i.e.*, U.S. Health, under a theory of negligent credentialing. Both filed discovery requests for certain materials which are the crux of this appeal. Since the issues raised in both appeals are similar, *e.g.*, requested materials and the court's lack of a rationale, and the arguments advanced are similar in substance, we have consolidated these appeals. We have also prepared an appendix of the discovery requests, which is attached to this opinion, so that each item requested can be considered independently.

On January 22, 1992, when he filed his complaint, Kalb filed a Civ.R. 34 demand for production of certain documents from Dr. Morehead. Ratliff made a similar request. See Appendix. Kalb requested all medical, hospital, educational, training and financial reports and records related in any way to Dr. Morehead. He sought records from the Ohio State Medical Board, the Florida State Medical Board, the College of Medicine of the University of Florida, the Missouri State

Board of Registration for the Healing Arts, and the National Board of Medical Examiners. He also sought records from the Albert Einstein College of Medicine, the University of the State of New York, the State Education Department, Division of Professional Licensing Services, Guernsey Memorial Hospital, the U.S. Health Corporation, Ridgeview Institute, Brawner Psychiatric Institute, Doyle O. Snyder, M.D., Jesse B. Kellum, M.D., Ohio University, the Ohio State University, and the University of Illinois. Obviously, some of this appears to be discoverable, and some clearly is not.

On March 13, 1992, when the defendants filed their answers consisting of a general denial, Morehead filed a request for a Civ.R. 26(C) protective order. He argued that it was not possible for him to obtain records possessed by other parties, and that the discovery requests, designed to annoy and embarrass him, constituted an undue burden. He also said the requested records were confidential and had no relevance to the issue of whether Scioto Memorial was negligent in hiring and retaining him.

On May 26, 1992, Kalb filed a Civ.R. 37 motion to compel discovery. In this motion, Kalb said the matters were relevant because Dr. Morehead misrepresented his qualifications and background to the Ohio State Medical Board and to Scioto Memorial. Specifically, Kalb said Morehead lost his medical license in Florida and was refused readmittance. He was drug- and alcohol-dependent and undergoing treatment, and that his admittance to practice in Ohio was probationary. Morehead had not completed certain fellowships, despite his representation to the contrary, and the Missouri State Medical Board refused to issue a license to Morehead.

On July 9, 1992, the court granted Morehead's request for a protective order, but did not give any reasons for doing so, such as that the material requested was privileged, that to comply with the discovery request would be unduly burdensome, etc.

On March 3, 1993, Kalb filed a motion requesting additional discovery, such as copies of Kalb's consent form and a copy of Kalb's medical records. He also requested documentation that Morehead visited Kalb after the surgery, Morehead's personnel file, Morehead's contract with U.S. Health, and documentation of Morehead's CME credits. Kalb also requested copies of the rules, regulations, and policies of Scioto Memorial, which set forth the procedures and requirements in granting or renewing clinical and surgical privileges to physicians, and which set forth the duties of the Medical Records Committee.

U.S. Health sent copies of Kalb's consent form and documentation that Morehead had visited Kalb after the surgery. However, U.S. Health said Kalb's medical records were not available. As to all other requested material, U.S. Health filed a motion for a protective order asserting various grounds. On April

19, 1993, the court granted the protective order, again without saying why it was doing so. A similar course of events took place in the *Ratliff* case.

In *Kalb,* on June 30, 1993, U.S. Health filed a motion for summary judgment, and Morehead did likewise on July 7, 1993. On September 3, 1993, the court granted summary judgment to both defendants. On July 8, 1993, U.S. Health filed a motion for summary judgment against Ratliff, which was granted September 3, 1993. Morehead followed suit on August 31, 1993, and was granted summary judgment in his favor on September 28, 1993. Kalb and Ratliff timely filed notices of appeal and assign the following errors.

First Assignment of Error

"The trial court erred in granting defendants' motions for protective orders."

In their first assignment of error, appellants say the requested material was discoverable and the court erred by granting the defendants' requests for protective orders. The materials requested from the two defendants are different, as are the reasons advanced for seeking the protective orders.

In an effort to show Morehead was not qualified to perform the operation and Scioto Memorial knew he was not qualified, Kalb requested information pertaining to Morehead's personnel file, Morehead's contract with U.S. Health, documentation of Morehead's CME credits, and copies of certain bylaws, rules, regulations, orders and policies of Scioto Memorial Hospital, to show that they had not been followed.

In response to the requests, Morehead asserts that they were irrelevant and unduly burdensome, while Scioto Memorial argues it is an attempt to violate the Peer Review Statute, R.C. 2305.25, and the requested material was not discoverable under R.C. 2305.251.

In *Browning v. Burt* (1993), 66 Ohio St.3d 544, 613 N.E.2d 993, the Supreme Court stated that R.C. 2305.25 does not provide a hospital with immunity for negligence in granting or continuing staff privileges to an incompetent physician. See, also, R.C. 2305.25(E), which specifies that "[n]othing in this section shall relieve any individual or hospital from liability arising from treatment of a patient."

The purpose of R.C. 2305.25 is clear. The statute extends limited protection to those who provide information to certain review boards and committees to encourage the free flow of information without threat of reprisal in the form of civil liability. See, generally, *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609. The statute also seeks to protect those serving on committees and committee employees for the obvious reason that it could be difficult to staff a

committee without such protections. *Moore v. Burt* (1994), 96 Ohio App.3d 520, 645 N.E.2d 749.

R.C. 2305.251 is clear and unambiguous:

"Proceedings and records of all review committees described in Section 2305.25 of the Revised Code shall be held in confidence and *shall not be subject to discovery * * *.*

" * * * Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented during proceedings of a committee nor should any person testifying before a committee or who is a member of the committee be prevented from testifying as to matters within his knowledge, but the witness cannot be asked about his testimony before the committee or opinion formed by him as a result of the committee hearing." (Emphasis added.)

The statute's protection is limited to protecting those who serve on review boards and those who provide information to review boards. *Moore.*

R.C. 2305.25 does not provide a hospital with immunity for negligence in granting or continuing staff privileges to an incompetent physician. *Browning, supra.* The requested material might be discoverable to show that Scioto Memorial knew, or had reason to know, Morehead was incompetent. Or the material might be protected and subject to a protective order under R.C. 2305.25. Since the trial court never ruled specifically on these competing claims, we have no way of knowing why the protective order was granted. See Appendix.

Kalb and Ratliff asked Dr. Morehead for all medical, hospital, education, training and financial reports and records related in any way to Dr. Morehead from the Ohio State Medical Board, the Florida State Medical Board, the College of Medicine of the University of Florida, the Missouri State Board of Registration for the Healing Arts, the National Board of Medical Examiners, the Albert Einstein College of Medicine, the University of the State of New York, the State Education Department, Division of Professional Licensing Services, Guernsey Memorial Hospital, the U.S. Health Corporation, Ridgeview Institute, Brawner Psychiatric Institute, Doyle O. Snyder, M.D., Jesse B. Kellum, M.D., Ohio University, the Ohio State University, and the University of Illinois. In the alternative, Kalb supplied release forms, to be signed by Morehead, for the enumerated institutions and individuals.

In response, Morehead moved for a protective order. He based his request primarily on the Peer Review Statutes and argued that Kalb and Ratliff were, in reality, attempting to circumvent the Peer Review Statutes in an effort to establish negligent credentialing. It is axiomatic that a party cannot do indirect-

ly that which he could not do directly, and a protective order on that ground might be appropriate. There is no indication in the record, however, that the order was granted on that ground.

While we note the limited applicability of the Peer Review Statute, we also note that some of the requested material may be subject to a protective order for other reasons. For instance, it appears Dr. Morehead was a patient at Brawner Psychiatric Institute about ten years before and, in all probability, those requested materials are completely irrelevant to his qualifications as a doctor. See Civ.R. 26(B)(1). It is the trial court's task to determine which material is properly discoverable and which is not. This was not done in these cases.

Morehead urges that we take judicial notice of *Veach v. Morehead*, No. 88–CI–119, Common Pleas Court of Scioto County, and argues that, under *Veach*, the court properly issued protective orders because appellants already had possession of most of the desired material. This, too, is a legitimate ground on which discovery might be denied, but with the record in its present state, this court can only guess at the basis for the protective order.

We therefore find this first assignment of error is well taken, and we remand the cause with specific instructions as set out in the concluding paragraph of this opinion.

Second Assignment of Error

"The trial court erred in failing to order production of the requested documents for an *in camera* inspection and preservation for the record on appeal."

In view of our decision regarding the first assignment of error, the second assignment of error is well taken, and likewise will be dealt with in our order on remand.

Third Assignment of Error

"The trial court erred in granting defendant U.S. Health Corporation of Southern Ohio's motion for summary judgment."

Fourth Assignment of Error

"The trial court erred in granting summary judgment to defendant Morehead."

When reviewing an order for summary judgment, we do not give deference to the trial court. In a case regarding the propriety of a summary judgment, our review is *de novo* in nature and we apply the same standard as the trial court. See *Tohline v. Cent. Trust Co., N.A.* (1988), 48 Ohio App.3d 280, 281, 549 N.E.2d 1223, 1226; *Howard v. Wills* (1991), 77 Ohio App.3d 133, 601 N.E.2d 515. In essence, we examine the materials before us and determine:

"(1) whether a genuine issue as to any material fact remains to be litigated; (2) whether the moving party is entitled to judgment as a matter of law; and (3) whether it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party." *Tohline, supra,* 48 Ohio App.3d at 281, 549 N.E.2d at 1226. See, also, *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

■ Summary judgment may not be granted before discovery is completed. In view of our holding on the first assignment of error, Kalb's third and fourth assignments of error are well taken and are sustained.

In addition to the above joint assignments of error, Ratliff assigns the following error:

Ratliff's Assignment of Error Number Three

"The trial court erred in overruling plaintiff's motion to compel response to deposition questions of Bhagwan Satiani."

Ratliff took the deposition of Dr. Satiani, who performed an operation to correct alleged problems resulting from the operation at Scioto Memorial. Ratliff asked Satiani how many times he had corrected operations originating with Dr. Morehead. Satiani, over objection, said he wasn't sure but he believed it to be in excess of six. Ratliff moved the trial court to direct Satiani to provide the exact number on the grounds that it was evidence that Scioto Memorial had constructive knowledge of the quality of Morehead's work. Although it seems unlikely that any court would compel a witness to give a more exact answer than the witness is willing to give, the court refused to compel an answer without saying why it was doing so.

■ The admission of evidence is generally within the sound discretion of the trial court and a reviewing court may reverse only upon a showing of an abuse of discretion. *Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 587 N.E.2d 290, citing *Renfro v. Black* (1990), 52 Ohio St.3d 27, 32, 556 N.E.2d 150, 155. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622, 624; *State v. Moreland* (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898; *State v. Montgomery* (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167, 170; *State v. Xie* (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715, 719.

Evid.R. 402 provides that all relevant evidence is admissible, and evidence which is not relevant is not admissible. *State v. Moore* (1988), 40 Ohio St.3d 63, 531 N.E.2d 691; *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 529 N.E.2d 1382. However, Evid.R. 403(A) mandates the exclusion of relevant evidence if its probative value is outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury. See *State v. Pierce* (1992), 64 Ohio St.3d 490, 597 N.E.2d 107.

Ratliff also asked Dr. Satiani on deposition whether he had an opinion regarding the quality of care Dr. Morehead provided. Satiani said he would not answer unless he had legal representation.

It is well settled in Ohio that in order to prevail in a medical malpractice claim, a plaintiff must demonstrate through expert testimony that, among other things, the treatment provided did not meet the prevailing standard of care.

"Proof of the recognized standards must necessarily be provided through expert testimony. This expert must be qualified to express an opinion concerning the specific standard of care that prevails in the medical community in which the alleged malpractice took place, according to the body of law that has developed in this area of evidence." *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 102, 592 N.E.2d 828, 832. See, also, *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673.

We have reviewed Satiani's deposition and find no error. Ratliff did not qualify Satiani as an expert witness. No foundation was laid for the basis on which Satiani premised his expert opinion. Any opinion Satiani would have regarding the care afforded by Dr. Morehead would thus appear to be non-expert opinion testimony. Again, however, we have no indication in the record as to why the motion to compel was not granted.

Since this cause is to be remanded, however, Ratliff suffers no prejudice. He is still free to introduce expert witnesses, such as Satiani, to establish the prevailing standard of care and whether Morehead satisfied that standard. Ratliff's third assignment of error is not well taken and is overruled.

Based on the foregoing the judgment of the trial court is reversed. This cause is remanded to the trial court with instructions to the trial court to rule on each of the requests for discovery listed in the Appendix of this opinion, and to state for the record in writing the reason for granting or denying discovery of each item listed therein.

*Judgment reversed*
*and cause remanded.*

PETER B. ABELE and STEPHENSON, JJ., concur.

## APPENDIX

Because of the many and varied requests for discovery in this case, and because of the failure of the trial court to rule with specificity on any of the requests, we are including this Appendix in our opinion. This Appendix has four parts:

A. Ratliff's request for discovery from Morehead

B. Ratliff's request for discovery from U.S. Health

C. Kalb's request for discovery from Morehead

D. Kalb's request for discovery from U.S. Health.

A. *Ratliff's request for discovery from Morehead*

On March 13, 1992, Ratliff requested that Morehead produce the following documents within thirty-one days:

1. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the State Medical Board of Ohio.

2. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the Florida Board of Medicine.

3. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the University of Florida, College of Medicine.

4. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the Missouri State Board of Registration for the Healing Arts.

5. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the National Board of Medical Examiners.

6. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the Albert Einstein College of Medicine.

7. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the University of the State of New York, the State Education Department, Division of Professional Licensing Services.

8. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Guernsey Memorial Hospital.

9. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of U.S. Health Corporation.

10. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Ridgeview Institute.

11. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Brawner Psychiatric Institute.

12. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Doyle O. Snyder, M.D.

13. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Jesse B. Kellum, M.D.

14. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Ohio University.

15. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Ohio State University.

16. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of University of Illinois.

On April 2, 1992, Morehead filed an answer and a motion for protective order pursuant to Civ.R. 26(C). He argued that all requests should be denied on the grounds that the requested material was not germane to the issue of negligence or that the real reason for the requested material was an attempt to circumvent the state Peer Review Statutes. On May 27, 1992, Ratliff filed a motion to compel discovery pursuant to Civ.R. 37.

Although it appears that some of the items are not likely to be discoverable, some others might be. On July 2, 1992, Morehead answered Ratliff's request to compel discovery. He argued that the requests were irrelevant and did not address the issue of negligence. He also argued that the material requested pertained to another claim, i.e., against Southern Ohio Health, and was not

related to the suit against him. He also argued that the requested material was an attempt to circumvent the Peer Review Statute. On July 9, 1992, the court granted a blanket protective order for all materials requested. No reason was given for denying the request for discovery of any of these items.

On March 3, 1993, Ratliff filed a second demand for production of documents to Morehead, pursuant to Civ.R. 34, and requested the list below. On April 14, 1993, Ratliff filed a motion to compel his request for discovery of the items below:

1. A complete copy of Robert Ratliff's medical records maintained in the offices of Defendant Raymond A. Morehead, M.D. A signed release form is enclosed.

2. Copies of any and all written communications between U.S. Health Corporation of Southern Ohio, Mercy Hospital, Scioto Memorial Hospital or any affiliates and the Defendant, Raymond A. Morehead, M.D., during calendar year 1983 and 1984, which discuss or address in any way his move to Portsmouth.

3. Copies of any and all diplomas, certificates or other documentation with respect to Defendant, Raymond A. Morehead, M.D.'s, medical education and training in thoracic surgery.

4. Copies of any and all diplomas, certificates, or other documentation with respect to Defendant, Raymond A. Morehead, M.D.'s medical education and training in vascular surgery.

5. Copies of the consent forms pertaining to any and all surgical procedures performed on Plaintiff, Robert Ratliff, by Defendant, Raymond A. Morehead, M.D.

6. A complete copy of Defendant, Raymond A. Morehead, M.D.'s income tax returns for calendar year 1990.

7. A compiled list of the names and last known addresses of Defendant, Raymond A. Morehead, M.D.'s office staff for calendar year 1990.

8. Copies of any and all brochures, pamphlets, advertisements, circulars, press releases, etc., in the possession of Defendant, Raymond A. Morehead, M.D., caused to be published and or distributed by Defendant, U.S. Health Corporation of Southern Ohio, with respect to his practice in the Portsmouth area.

9. Copies of any and all brochures, pamphlets, advertisements, circulars, press releases, etc., caused to be published and or distributed by Defendant, Raymond A. Morehead, M.D., with respect to his practice in the Portsmouth area.

10. Copies of any and all contracts, agreements, etc., between Defendant, Raymond A. Morehead, M.D., and Defendant, U.S. Health Corporation of Southern Ohio which were in effect in calendar year 1990.

On March 3, 1993, Ratliff filed a second demand for discovery, pursuant to Civ.R. 34, on U.S. Health Corporation of Southern Ohio. He requested:

1. Pages one through seven of the eleven-page document that was attached to Defendant, U.S. Health Corporation of Southern Ohio's Answers to Plaintiff's Interrogatories in response to Interrogatory Number 8 which purports to be Defendant, Raymond A. Morehead, M.D.'s, 1984 application for privileges.

2. Complete copies of all other applications for clinical and or surgical privileges submitted by Defendant, Raymond A. Morehead, M.D., such as those submitted in response to Interrogatory Number 8 of Plaintiffs' First Set of Interrogatories to Defendant, U.S. Health Corporation of Southern Ohio.

3. Copies of any and all advertisements, announcements, or other notices caused to be published by the Defendant, U.S. Health Corporation of Southern Ohio, Mercy Hospital, Southern Ohio Medical Center or their affiliates seeking a vascular and/or thoracic surgeon in calendar years 1983 and 1984.

4. Copies of any and all written communications between Defendant, U.S. Health Corporation of Southern Ohio, Mercy Hospital, Scioto Memorial Hospital, the Southern Ohio Medical Center or their affiliates and the Defendant, Raymond A. Morehead, M.D., during calendar year 1983 and 1984 which discuss or address in any way his move to Portsmouth.

5. Copies of any and all diplomas, certificates or other documentation in the possession of Defendant, U.S. Health Corporation of Southern Ohio, with respect to Defendant, Raymond A. Morehead, M.D.'s medical education and training in thoracic surgery.

6. Copies of any and all diplomas, certificates or other documentation in the possession of Defendant, U.S. Health Corporation of Southern Ohio, with respect to Defendant, Raymond A. Morehead, M.D.'s, medical education and training in vascular surgery.

7. Copies of any and all consent forms signed by Plaintiff, Robert Ratliff, with respect to the surgery performed by Defendant, Raymond A. Morehead, M.D., at the facility of Defendant, U.S. Health Corporation of Southern Ohio, in September 1990.

8. Copies of any and all brochures, pamphlets, advertisements, circulars, press releases, etc., that were caused to be published by Defendant, U.S. Health Corporation of Southern Ohio, with respect to having a thoracic and/or vascular surgeon at their facilities.

9. (Missing.)

10. A copy of the Credentials Committee section of the medical staff by-laws of both Mercy and Scioto Memorial campuses of Defendant, Southern Ohio

Medical Center, which were in effect when Defendant, Raymond A. Morehead, M.D. presented his application for privileges.

On August 17, 1993, Morehead filed a motion requesting a protective order, arguing that the requested material was protected under the Peer Review Statutes. On August 31, 1993, Morehead filed a motion for summary judgment.

Although it appears in the record that neither the motion to compel nor the August 17 motion for a protective was ever ruled upon, on September 28, 1993, the court granted Morehead's motion for summary judgment.

B. Ratliff's request for discovery from U.S. Health

On June 10, 1992, Ratliff sent the following interrogatories to U.S. Health Corporation of Southern Ohio, pursuant to Civ.R. 33:

"1. State the full name, address and position of the person or persons answering these Interrogatories and supply the same for anyone who assisted in their preparation designating by number which Interrogatories were answered by each person in whole or in part.

"2. Please identify each and every person whom Defendant expects to call as an expert witness, stating his/her name, address, occupation, specialty and qualifications. Also, please identify the subject matter he/she is expected to testify on, the facts and opinions to which he/she intends to testify, and the grounds for each opinion.

"3. Please identify the names of the individuals who participated in the appointment process of Defendant, Raymond A. Morehead, M.D., to the medical staff of Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, describing fully the specific procedures which were followed and provide the date the application was approved.

"4. Did Defendant, Raymond A. Morehead, M.D., provide Authorizations for the Release of Information with respect to his education, training and continuing education to Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, when he made application for privileges at their facility?

"5. If the answer to the preceding Interrogatory is in the affirmative, did Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, utilize these releases in order to obtain verification of Defendant, Raymond A. Morehead's education, medical training and continuing education?

"6. If the answer to the preceding Interrogatory is in the affirmative, please list the names and addresses of any and all universities, hospitals, medical boards, etc., that Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, contacted in order to obtain verification of Defendant, Raymond

A. Morehead, M.D.'s, education, medical training and continuing education describing fully the procedure followed and the names of the individuals who made these contacts?

"7. Describe, in detail, any other type of investigation or inquiry performed by Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, to obtain verification of Defendant, Raymond A. Morehead, M.D.'s education, medical training and continuing education and identify the names of those individuals who performed this investigation?

"8. Please describe the clinical and surgical privileges that Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, initially granted Defendant, Raymond A. Morehead, M.D., and provide the date these privileges were granted.

"9. As of September 1, 1990, did Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, regularly review the quality of patient care provided by physicians through meetings of one or more committees composed of members of the medical staff?

"10. Please identify each and every committee of Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, that reviewed the medical care provided by Defendant, Raymond A. Morehead, M.D., stating the names of the individuals who composed the committee; describing fully the function of each committee and describing the procedures used to conduct such reviews.

"11. As of September 1, 1990, what established procedures did Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, have for the restriction, suspension, revocation or termination of the surgical privileges of medical staff members?

"12. At any time did Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, ever restrict, suspend or terminate the clinical or surgical privileges of the Defendant, Raymond A. Morehead, M.D.?

"13. If the answer to the above Interrogatory is in the affirmative, please state the dates of these restrictions, suspensions or terminations and describe the adjusted clinical and surgical privileges Defendant, Raymond A. Morehead, M.D., was granted.

"14. As of September 1, 1990, did Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, regularly review the quality of patient care provided by physicians through meetings of one or more committees composed of members of the medical staff?

"15. If any of these committees of Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, reviewed the medical care provided by Defendant, Raymond A. Morehead, M.D., please identify each of these committees; state the names of the individuals who composed them; and describe fully the procedures used to conduct such reviews.

"16. Describe fully each procedure of the Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, used to make any internal audit to discover cases that did not comport with its established criteria for proper patient care.

"17. Was Defendant, Raymond A. Morehead, M.D., ever the subject of any internal audit procedure performed by Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center?

"18. If your answer to the preceding Interrogatory is in the affirmative, describe fully the reasons for such an audit.

"19. Describe any changes in the clinical privileges and/or staff membership granted to Defendant, Raymond A. Morehead, M.D., after their initial grant.

"20. As of September 7, 1990, who were the members of the medical staff who held clinical privileges to perform vascular surgery?

"21. Please set forth the dates that any suits were filed against the Defendant, Raymond A. Morehead, M.D., joining Defendant, U.S. Health Corporation of Southern Ohio, Southern Ohio Medical Center, as a party and provide the case numbers; the names of the parties involved and the names of their attorneys; the particular court where the complaint was filed and the judgments rendered, if any."

On June 18, 1992, U.S. Health Corporation of Southern Ohio responded to some of the interrogatories. U.S. Health said it had previously supplied a complete medical record. It said the arteriogram films could be picked up in Portsmouth upon a payment of $48. It said it had not yet determined what documents it would offer into evidence.

Attached to the above answers was a request for a protective order. The memorandum argued that the materials requested were either irrelevant or protected from discovery under the Peer Review Statute. It sought a protective order regarding:

1. Copies of insurance policies which provided liability coverage.

2. A copy of the medical staff by-laws of Southern Ohio Medical Center, in effect in September 1990.

3.  A copy of the Accreditation Manual for Hospitals of the Joint Commission on Accreditation of Health Care Organizations in effect during calendar year 1990.  .

4.  Any and all applications, including renewal applications by the Defendant, Raymond A. Morehead, to Southern Ohio Medical Center, or its predecessors, for hospital staff membership or clinical privileges.

5.  Copies of any and all communications received by the Defendant, Southern Ohio Medical Center, or its predecessors, from other health care institutions, universities, colleges, licensing boards, individuals or other entities regarding the Defendant, Raymond A. Morehead, M.D., and his qualifications to practice medicine.

6.  Copies of any administrative or personnel files maintained by Southern Ohio Medical Center with respect to the Defendant Raymond A. Morehead, M.D.

7.  Copies of any and all releases of information provided by the Defendant, Raymond A. Morehead, to the Defendant Southern Ohio Medical Center, authorizing Southern Ohio Medical Center to obtain documents regarding his education, training, or other matters.

On July 7, 1992, U.S. Health Corporation further answered the interrogatories filed on June 10, 1992, asserting various answers and claims.  It answered the first question.  As to the second question, it said discovery was not complete.  It responded "yes" to question 9.  It answered "no" to question 12, gave no response to question 13, and "yes" to question 14.  It also answered questions 19, 20 and 21.  To questions 3, 4, 5, 6, 7, 8, 10, 11, 15, 16, 17 and 18, it responded with a memorandum requesting a protective order under the Peer Review Statutes.

On July 7, 1992, the court filed a judgment entry granting a protective order to U.S. Health as to questions 3, 4, 5, 8, 9, and 10.  On August 3, 1992, the court filed a judgment entry granting U.S. Health's request for a protective order as to questions 3, 4, 5, 6, 7, 10, 15, 16, 17, and 18.  No reason for the court's order was stated for any of the items.

On March 31, 1993, U.S. Health Corporation of Southern Ohio filed a motion for a protective order as to interrogatories 1, 2, 4, 5, 6, and 10.  In its motion, it argued that the Peer Review Statutes were applicable and the requested material was protected from discovery.  Also on March 31, 1993, U.S. Health supplied the following in response to Ratliff's motion for discovery.  As to requests 1, 2, 4, 5, 6, and 10, it asserted protection under the Peer Review Statutes.  As to request 3, it supplied an advertisement.  As to request 7, it supplied Ratliff's consent form.  As to request 8, it argued that none were available.

On April 19, 1993, the court issued a judgment entry which granted U.S. Health's request for a protective order as to questions 1, 2, 4, 5, 6, and 10, which was everything U.S. Health requested. Again no grounds for the granting of the protective order were stated in the court's entry.

On August 20, 1993, U.S. Health filed the following answer to Ratliff's request for discovery:

"1. How many vascular procedures did Defendant, Raymond A. Morehead, M.D. perform at the facilities of Defendant, U.S. Health Corporation, of Southern Ohio, from the time he was granted privileges in 1984, through September 7, 1990?

"Answer: Objection. Too broad and voluminous, irrelevant and not likely to lead to admissible evidence; Peer Review Statute. Plaintiffs' counsel in this set of interrogatories is again attempting to get information that he cannot get because of Peer Review privileges. It is also information that would require reviewing 800 to 900 surgeries per month line by line, reviewing the charts and following the patient's progress thereafter, and would be impossible to do within any reasonable limitation.

"2. Specifically, how many femoral popliteal bypasses did Defendant, Raymond A. Morehead, M.D. perform at the facilities of Defendant, U.S. Health Corporation of Southern Ohio, from the time he was granted privileges in 1984, through September 7, 1990?

"Answer: See 1.

"3. How many deaths resulted from vascular surgeries performed by Defendant, Raymond A. Morehead, M.D., at the facilities of Defendant, U.S. Health Corporation of Southern Ohio, from the time he was granted privileges in 1984, through September 7, 1990?

"Answer: See 1, however none are known.

"4. How many deaths resulted from femoral popliteal bypasses performed by Defendant, Raymond A. Morehead, M.D. at the facilities of Defendant, U.S. Health Corporation of Southern Ohio, from the time he was granted privileges in 1984, through September 7, 1990?

"Answer: See 1, however none are known.

"5. How many patients were transferred to other facilities for corrective procedures or additional surgery as a result of vascular surgery performed by Defendant, Raymond A. Morehead, M.D. at the facilities of Defendant, U.S. Health Corporation of Southern Ohio, from 1984, through September 7, 1990?

"Answer: See 1.

"6. How many patients were transferred to other facilities for corrective procedures or additional surgery as a result of femoral popliteal bypasses performed by Defendant, Raymond A. Morehead, M.D. at the facilities of Defendant, U.S. Health Corporation of Southern Ohio, from 1984, through September 7, 1990?

"Answer: See 1."

On July 8, 1993, U.S. Health filed a motion requesting summary judgment. On September 2, 1993, U.S. Health filed a supplement to their motion for summary judgment. On September 3, 1993, the court granted U.S. Health Corporation's request for summary judgment.

C. Kalb's request for discovery from Morehead

On January 22, 1992, Kalb, pursuant to Civ.R. 34, requested that Morehead produce the following documents within thirty-one days:

1. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the State Medical Board of Ohio.

2. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the Florida Board of Medicine.

3. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the University of Florida, College of Medicine.

4. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the Missouri State Board of Registration for the Healing Arts.

5. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the National Board of Medical Examiners.

6. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the Albert Einstein College of Medicine.

7. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of the University of the State of New York, the State Education Department, Division of Professional Licensing Services.

8. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Guernsey Memorial Hospital.

9. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of U.S. Health Corporation.

10. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Ridgeview Institute.

11. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Brawner Psychiatric Institute.

12. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Doyle O. Snyder, M.D.

13. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Jesse B. Kellum, M.D.

14. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Ohio University.

15. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of Ohio State University.

16. Copies of any and all medical, hospital, education, training and financial reports and records, related in any way to Raymond A. Morehead and in the possession or control of University of Illinois.

Release forms were attached for the above sixteen requests.

On March 13, 1992, Morehead filed an answer and a motion for protective order pursuant to Civ.R. 26(C). He argued that all requests should be denied. He did not list number sixteen, University of Illinois. He argued that the requested material was not germane to the issue of negligence and that the real reason for the requested material was an attempt to circumvent the state Peer Review Statutes.

On May 26, 1992, Kalb filed a motion to compel discovery pursuant to Civ.R. 37. Ironically, in his memorandum, Kalb appears to possess much of the requested information.

On June 16, 1992, Morehead answered Kalb's interrogatories. Specifically, he said that he had not been denied a license to practice medicine by any state, that his Florida license was placed on probationary status, that he underwent treatment for chemical dependency, that Lima Memorial temporarily suspended his staff privileges because of a retroactive rescission of his medical malpractice insurance, and that the fluid in Kalb's body was an accumulation of bloody serum. Morehead also listed his insurance carrier and the amount of coverage.

On July 9, 1992, the court issued a judgment entry granting the protective order based on Morehead's memorandum of March 13, 1992. No reason for the granting of the protective order was stated in the entry.

D. Kalb's request for discovery from U.S. Health

On March 3, 1993, Kalb filed a request for discovery, pursuant to Civ.R. 34, on U.S. Health Corporation of Southern Ohio.

Kalb requested:

1. Copies of every consent form signed by Plaintiff, Bruce Kalb, with respect to any and all surgical procedures performed by Defendant, Raymond A. Morehead, M.D., at the facilities of Defendant, U.S. Health Corporation of Southern Ohio.

2. Copies of any documentation that establishes that Defendant Raymond A. Morehead, M.D., personally visited Plaintiff, Bruce Kalb, in the recovery room after the surgery of May 17, 1990.

3. Copies of any documentation that establishes that Defendant, Raymond A. Morehead, M.D., personally visited Plaintiff, Bruce Kalb, within twenty-four hours after the surgery of May 17, 1990.

4. Copies of any and all written bylaws, rules, regulations, orders, policies or other pertinent documents in effect in 1990, at the Scioto Memorial Campus of Defendant, U.S. Health Corporation of Southern Ohio, which set forth the prescribed procedures and requirements to be followed by physicians who perform surgery at the hospitals, including but not limited to the dictation of operative reports, discharge summaries, histories and physicals, and the duty of the surgeon to personally visit a patient after surgery.

5. Copies of any and all written bylaws, rules, regulations, orders, policies or other pertinent documents of the medical staff relating to professional activity at the Scioto Memorial Campus of Defendant, U.S. Health Corporation of Southern Ohio, which set forth the prescribed procedures and requirements to be followed by physicians who perform surgery at the hospitals, including but not limited to the dictation of operative reports, discharge summaries, histories and physicals, and the duty of the surgeon to personally visit a patient after surgery.

6. A copy of the pertinent parts of the medical staff bylaws and policies at the Scioto Memorial Campus of Defendant, U.S. Health Corporation of Southern Ohio, which were in effect in 1984, with respect to the granting of clinical and surgical privileges to physicians.

7. A copy of the pertinent parts of the medical staff bylaws and policies at the Scioto Memorial Campus of Defendant, U.S. Health Corporation of Southern Ohio, which were in effect in 1990, with respect to the granting or renewal of clinical and surgical privileges to physicians.

8. A copy of the pertinent parts of the medical staff bylaws of the Scioto Memorial Campus of Defendant, U.S. Health Corporation of Southern Ohio, which were in effect in 1990, with respect to the duties, rules, regulations or policies of the Medical Records Committee.

9. A copy of Defendant, Raymond A. Morehead, M.D.'s personnel file maintained by Defendant, U.S. Health Corporation of Ohio.

10. A copy of any and all contracts, agreements, etc., which were in effect in 1990, between Defendant, Raymond A. Morehead, M.D., and Defendant, U.S. Health Corporation of Ohio.

11. A copy of Defendant, Raymond A. Morehead, M.D.'s, Continuing Medical Education credits as of May 1990.

12. A copy Plaintiff, Bruce Kalb's medical records maintained at the offices of Defendant, Raymond A. Morehead, M.D. A signed medical release is enclosed.

On March 31, 1993, U.S. Health filed its response to the requested material, pursuant to Civ.R. 34. It asserted that items four through eleven were not discoverable because of the Peer Review Statute. It said item twelve was not available. U.S. Health supplied a copy of Kalb's consent form and documentation that Morehead visited Kalb.

On April 14, 1993, Kalb filed a Civ.R. 37 motion to compel discovery and argued that the Peer Review Statute was not applicable.

On April 19, 1993, the court filed its judgment entry granting a protective order to 1, 2, 4, 5, 6, and 10. On April 20, the court filed an amended judgment entry expanding the protective order to include items 4, 5, 6, 7, 8, 9, 10, and 11. The court did not indicate the grounds for granting the order in the first place, nor the reason for expanding it.

On June 30, 1993, U.S. Health moved for summary judgment pursuant to Civ.R. 56. On July 7, 1993, Morehead moved for summary judgment. On September 3, 1993, summary judgment was granted to both defendants.