OPINION
{¶ 1} Defendants Manor Care of Canton, Inc. and H.C. R Manor Care Services, Inc., hereinafter referred to collectively as "Manor Care", appeal four judgments of the Court of Common Pleas of Stark County, Ohio. This court consolidated the cases because they all refer to the same issue. Manor Care assigns five errors to the trial court:
 {¶ 2} "I. IN CASE NO. 2005-CA-00100, THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED SMITH'S MOTION TO COMPEL BOYKINS' TESTIMONY WITHOUT CONDUCTING AN IN CAMERA INQUIRY INTO WHETHER THE TESTIMONY WAS PRIVILEGED PURSUANT TO R.C.2305.25 ET SEQ.
 {¶ 3} "II. IN CASE NO. 2005-CA-00100, THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED SMITH'S MOTION TO COMPEL BOYKINS' TESTIMONY BECAUSE THE INFORMATION SOUGHT WAS NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF EVIDENCE RELEVANT TO A COGNIZABLE CLAIM FOR RELIEF.
 {¶ 4} "III. IN CASE NO. 2005-CA-00160, THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO RECONSIDER AND VACATE ITS PRIOR ORDER GRANTING SMITH'S MOTION TO COMPEL.
 {¶ 5} "IV. IN CASE NOS. 2005-CA-00160 AND 00162, THE TRIAL COURT ERRED WHEN IT SUMMARILY DENIED THE MOTIONS FOR PROTECTIVE ORDER THAT SOUGHT TO PROHIBIT SMITH FROM ADDUCING ANY INFORMATION, DURING DISCOVERY OR AT TRIAL, RELATING TO CONVERSATIONS, DISCUSSIONS, OR WITNESS STATEMENTS PERTAINING TO THE INVESTIGATION INTO THE DEATH OF MR. MATHIS.
 {¶ 6} "V. IN CASE NOS. 2005-CA-00162 AND 00174, THE TRIAL COURT ERRED IN DENYING THE JOINT MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, RELIEF FROM JUDGMENT FILED BY MANOR CARE AND AIRHART."
 {¶ 7} Manor Care operates several nursing facilities. At issue here is the discoverability of information Manor Care gathered about the death of their patient, Tommie Mathis, the father of plaintiff-appellee Christine Smith. On May 8, 2004, at approximately 2:00 a.m., Gloria Carr, a nursing assistant, discovered Mr. Mathis with his head trapped between the mattress and side rail of his bed, with his lower limbs touching the floor next to the bed. A licensed practical nurse employed by Manor Care, Stephanie Boykins, responded to the aide's call for help. Boykins and a second aide freed Mr. Mathis and repositioned him on the bed, but Mr. Mathis had died. Someone called the nursing supervisor, Mary Ann Ratke, and Cynthia Airhart, Manor Care's Administrator.
 {¶ 8} After she arrived at the nursing facility, Airhart made arrangements to contact Mr. Mathis' family and the coroner. Both Airhart and Boykins spoke with the coroner, who asked Boykins if Mr. Mathis' airway had been blocked. Boykins answered no.
 {¶ 9} In her deposition, Boykins stated she met with Airhart, who inquired about the circumstances surrounding Mr. Mathis' death. Airhart requested written statements from Boykins and the aide, but after they prepared statements and gave them to Airhart, Airhart crumpled them up and put them into a desk drawer. Airhart then asked Boykins and the aide to write other statements with the assistance of the assistant director of nursing. Boykins testified she was not told what to write or told to lie. A day or two later, Boykins met with the director of nursing for Manor Care.
 {¶ 10} Sometime later, Boykins contacted the coroner because she felt uncomfortable with her original responses to the coroner's questions, and felt she may have not given complete details. When she spoke with the coroner the second time, Boykins told the coroner it was a possibility Mr. Mathias' airway could have been blocked.
 {¶ 11} Approximately one week after Mr. Mathis' death, Boykins contacted appellee Smith because she felt uncomfortable with the way things were being handled. Boykins informed Smith how her father was discovered with his head between the mattress and bed rail. She also told Smith Airhart had "balled up" the first written statement Boykins had made and put it in her desk.
 {¶ 12} The coroner's final report ruled Mr. Mathis died from positional asphyxiation. Thereafter, Smith as the executrix of Mr. Mathis' estate filed suit against Manor Care and its administrators alleging negligence and an attempt to conceal the cause of Mr. Mathis' death. Smith also brought suit against other parties under various theories of recovery. None of them are parties to this appeal.
 {¶ 13} On January 31, 2005, Smith deposed Boykins. During the course of her deposition, Boykins testified about finding Mr. Mathias' body, and reporting to her supervisors. She stated she had spoken to the coroner, and to appellee Smith.
 {¶ 14} During the course of the testimony, appellee Smith asked Boykins: (1) what was Ms. Airhart's reaction upon learning of the events about Mr. Mathias; (2) what did Ms. Airhart say when she crumpled up Ms. Boykins' and the aide's statements and threw them into the desk drawer; (3) what additional conversation did Ms. Airhart have with Ms. Boykins and the aide during their meeting; (4) what conversation did Ms. Boykins have with the director of nursing a day or two after Mr. Mathias' death during a meeting initiated by Ms. Boykins and another nurses aide; and (5) what concerns did Ms. Boykins and the aide express to the director of nursing at their meeting.
 {¶ 15} Counsel for Manor Care instructed Ms. Boykins not to answer any of the above questions because he felt the information was not discoverable pursuant to R.C. 2305.25.
 {¶ 16} Appellee Smith then filed a motion to compel Boykins to answer the questions about which Manor Care had claimed peer review confidentiality. Smith filed her motion on February 28, 2005.
 {¶ 17} Manor Care filed no response, memorandum in opposition, or motion for extension to file a responsive brief. On March 22, 2005, the trial court sustained the motion to compel and directed the deposition of Stephanie Boykins be re-convened so she could answer the questions.
 {¶ 18} On April 7, 2005, Manor Care filed various pleadings, including a motion for a protective order, a motion for reconsideration of the court's order granting the motion to compel, a motion for clarification of the court's order, and a motion for leave to file a brief in opposition to the motion to compel. Manor Care also filed their brief in opposition to the motion to compel on April 7, 2005.
 {¶ 19} On June 8, 2005, the court overruled the motion for leave to file a brief in opposition. The court also overruled the motions for protective order, and the motion for reconsideration. The court found the motion for clarification was moot.
 {¶ 20} Thereafter, Manor Care filed a motion for reconsideration of these decisions or in the alternative for relief from judgment. On July 6, the court overruled this motion as well.
 {¶ 21} Manor Care has filed notices of appeal from the March 22, June 8, and July 6 judgment entries.
 {¶ 22} Manor Care correctly states our standard of reviewing discovery orders is generally the abuse of discretion standard, see Arnold v. American National Red Cross (1994),93 Ohio App. 3d 564. However, if a trial court's order contains an error of law in misconstruing or misapplying the applicable law, then this court reviews the matter de novo, Huntsman v. Aultman Hospital,
Stark App. Nos. 2004CA00124 and 2004CA00142, 2005-Ohio-1482,826 N.E. 2d 384. Manor Care urges the trial court misconstrued the statute and misunderstood the protection from disclosure the statute provides for information subject to peer review. We find the issue of the confidentially granted in the peer review statute is one of law and we will review the matter de novo. The questions regarding the motions to reconsider or in the alternative for relief from judgment are addressed to the discretion of the trial court and this court may not substitute our judgment for that of the trial court, see infra.
 I {¶ 23} In Manor Care's first assignment of error, it urges the court erred in granting the motion to compel without conducting an in camera inquiry into whether the testimony was privileged pursuant to R.C. 2305.24 et seq.
 {¶ 24} R.C. 2305.24 provides all information, data, reports, and records made available to a quality assurance committee or utilization committee of a hospital or long-term care facility are confidential and may be used only in the exercise of the proper functions of the committee.
 {¶ 25} R.C. 2305.25 defines an incident report or risk management report as "* * * a report of an incident involving injury or potential injury to a patient as a result of patient care provided by health care providers, including both individuals who provide health care and entities that provide health care, * * * prepared by or for the use of a peer review committee of a health care entity and within the scope of the functions of that committee." The statute also defines the term peer review committee as "* * * a utilization review committee, quality assessment committee, performance improvement committee, tissue committee".
 {¶ 26} These committees, inter alia, may conduct quality review activities involving the competence, professional conduct, or quality of care provided by health care providers. The statute provides a peer review committee may include the board or committee of a hospital, long-term care facility or other health care entity which reviews professional qualifications or activities of health care providers, including both the individuals who provide health care and the entities which provide health care.
 {¶ 27} R.C. 2305.252 states:
 {¶ 28} "Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider, including both individuals who provide health care and entities that provide health care, arising out of matters that are the subject of evaluation and review by the peer review committee. No individual who attends a meeting of a peer review committee, serves as a member of a peer review committee, works for or on behalf of a peer review committee, or provides information to a peer review committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the peer review committee or as to any finding, recommendation, evaluation, opinion, or other action of the committee or a member thereof. Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, but the information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records. An individual who testifies before a peer review committee, serves as a representative of a peer review committee, serves as a member of a peer review committee, works for or on behalf of a peer review committee, or provides information to a peer review committee shall not be prevented from testifying as to matters within the individual's knowledge, but the individual cannot be asked about the individual's testimony before the peer review committee, information the individual provided to the peer review committee, or any opinion the individual formed as a result of the peer review committee's activities. An order by a court to produce for discovery or for use at trial the proceedings or records described in this section is a final order."
 {¶ 29} Similarly, R.C. 2305.253 provides the contents of an incident report or risk management report are not subject to discovery, and are not admissible in evidence in the trial of a tort action. An individual who has prepared or has knowledge of the contents of the report shall not testify as to the contents of the report.
 {¶ 30} Manor Care correctly interprets the above as an attempt by the legislature to protect individuals who provide information without fear of reprisal and to protect the free exchange of information. The statutes are not designed to hinder civil lawsuits, Browning v. Burt, 66 Ohio St. 3d 544,1993-Ohio-178, 613 N.E. 2d 993.
 {¶ 31} Manor Care argues the trial court had a duty to conduct an in camera hearing in order to determine whether and to what extent the peer review privilege applies, see, e.g., Gatesv. Brewer (1981), 2 Ohio App. 3d 347.
 {¶ 32} We note appellee Smith provided the court with a complete copy of Boykins' deposition. Smith had no other evidence to submit to the court. Manor Care did not file any response to the motion to compel, and did not give the court any material with which to conduct an in camera review.
 {¶ 33} We find Manor Care cannot complain the court did not review the evidence it sought to protect if it had not provided the evidence to the court. Accordingly, we find the trial court did not err in sustaining the motion to compel on March 22, 2005.
 {¶ 34} The first assignment of error is overruled.
 II. {¶ 35} In their second assignment of error, appellants argue the information sought from Boykins was not reasonably calculated to lead to the discovery of irrelevant evidence. Appellee Smith included in her amended complaint a claim for fraudulent concealment of malpractice in the method and manner Mr. Mathis' death.
 {¶ 36} Appellee Smith points out the review of trial court's discovery order on the basis of relevance is not appealable under R.C. 2505.02. It also appears Manor Care never raised this issue before the court in any of its pleadings. Failure to bring to the trial court's attention the issue of relevancy of the evidence is generally constitutes a waiver, Leford v. Century 21-MaitlandRealty Company (1987), 32 Ohio St. 3d 121.
 {¶ 37} We agree the issue of the relevancy of the evidence is a separate issue from the peer review privilege, and one this court does not have jurisdiction to review.
 {¶ 38} The second assignment of error is overruled.
 III. {¶ 39} In its third assignment of error, Manor Care argues the trial court should have reconsidered and vacated its prior order granting the motion to compel. Appellee Smith has challenged this court's jurisdiction over this issue.
 {¶ 40} R.C. 2305.252 provides an order by a court to produce records or proceedings either in discovery or for use at trial is a final appealable order. The Civil Rules do not provide for a motion for reconsideration of a final appealable order, Pitts v.Ohio Department of Transportation (1981), 67 Oho St. 2d 378,423 N.E. 2d 1105.
 {¶ 41} We find this court has no jurisdiction to review the motion for reconsideration. However, Manor Care has asked in the alternative the motion be treated as a motion for relief from judgment pursuant to Civ. R. 60. This court has jurisdiction to review such motions.
 {¶ 42} Civ. R. 60 (B) provides:
{¶ 43} (B) Mistakes; inadvertence; excusable neglect; newlydiscovered evidence; fraud; etc On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.
 {¶ 44} In order to obtain relief from judgment pursuant to Civ. R. 60 (B), a movant must demonstrate (1) the party has a meritorious defense or claim to present if the relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60 (B)(1) through (5); and (3) the motion was made within a reasonable time, GTE Automatic Electric v. ARCIndustries (1976), 47 Oho St. 2d 146, 351 N.E. 2d 113.
 {¶ 45} Civ. R. 60 (B) represents an attempt to strike a balance between conflicting principles that litigation must be brought to an end and justice should be done, Colley v. Bazell
(1980), 64 Ohio St. 2d 243, 416 N.E. 2d 605. A motion for relief from judgment is addressed to the sound discretion of the trial court and must not be disturbed by this court absent an abuse of discretion, Griffey v. Rajan (1987), 33 Ohio St. 3d 75,514 N.E. 2d 1122. The Supreme Court has frequently defined the term abuse of discretion as implying the court's attitude is unreasonable, arbitrary, or unconscionable, see, e.g., Blakemorev. Blakemore (1983), 5 Ohio St. 3d 217, 450 N.E. 2d 1140. Further, in examining the court's denial of a motion for relief from judgment this court does not review the correctness of the original judgment from which relief is sought, but rather we are limited to determining whether the trial court abused its discretion in failing to grant relief from judgment, Kochalko v.Kochalko, Guernsey App. No. 04CA15, 2004-Ohio-7098, citations deleted.
 {¶ 46} Manor Care argues its ground for relief from judgment is (1), excusable neglect and inadvertence. In support of this Manor Care attached to its pleadings the affidavit of lead counsel. Counsel explained the failure to file a brief in opposition to the motion to compel was something that occurred in transition of the case following the departure of the associate responsible for motion practice within the office of Manor Care's counsel.
 {¶ 47} In its judgment entry of June 8, 2005, the trial court rejected Manor Care's argument its failure to file any response to the motion to compel was excusable neglect. The court citedBrowning v. Health Enterprises of America, Inc. (June 26, 1987), Crawford App. No. 3-86-1, as authority for the proposition excusable neglect requires a finding of unique or extraordinary circumstances as opposed to a mere palpable mistake by counsel. The court found the departure of an associate from the firm and consequent mistaken belief a response had been filed does not constitute a unique or extraordinary circumstance. The court also noted the certificate of service attached to the motion indicates it was served on three different attorneys.
 {¶ 48} The court concluded Manor Care's failure to file a response does not constitute excusable neglect. This court is not prepared to find the court's attitude was unreasonable, arbitrary, or unconscionable, and we agree this prong of theGTE requirement was not met.
 {¶ 49} Assuming arguendo Manor Care demonstrated excusable neglect, we find it did not come forward with evidentiary material indicating it had a meritorious defense or claim to present if the relief were granted. As the trial court found in its June 8, judgment, Manor Care had not provided the court with any evidence that (1) Manor Care has a peer review committee, i.e., the name of committee, the bi-laws of the committee, or the scope of the committee; (2) the number of members on the committee or that Airhart or McKinney were or are part of peer review committee; (3) peer review committee of some sort ever held peer review proceedings relative to Mr. Mathis' death; (4) any of the information gathered was ever presented to a peer review committee; or (5) any of the information gathered was used to assess the quality of care provided by the nursing home staff or for any disciplinary action taken against an employee. The court found in the absence of any proof of peer review committee proceedings, Manor Care had not demonstrated any of the information sought by appellee was privileged pursuant to R.C.2305.252.
 {¶ 50} The parties disagree as to which party bears the burden of demonstrating the existence of the privilege. Manor Care urges once it invokes the privilege, the trial court must review the disputed evidence in camera to determine whether it is in fact covered by the statutes. Appellee Smith, on the other hand, urges a proponent of a privilege bears the burden of demonstrating the existence of the privilege.
 {¶ 51} In the recent case of Rinaldi v. City View Nursing Rehabilitation Center, Inc., Cuyahoga App. No. 85867,2005-Ohio-6360, the 8th District Court of Appeals was presented with a similar case. In Rinaldi, the decedent suffered from dementia and cognitive impairments. The nursing home placed decedent on a special floor of its facility which housed residents with these impairments, and identified the need for her to wear a monitoring device at all times. In spite of the identified risks, decedent was found at the bottom of a stairwell with fatal head, brain, and spinal cord injuries.
 {¶ 52} The complaint in Rinaldi alleged decedent's next of kin were never informed of the circumstances of her death. The administrator of decedent's estate brought suit for negligence, fraud, wrongful death, and other actions. When City View inexplicably was unable to produce decedent's medical chart, the executor filed an amended complaint adding a claim for spoliation of evidence.
 {¶ 53} During the course of discovery, the executor requested a privilege log listing all the documents City View had withheld from discovery. City View submitted the privilege log and disputed documents to the trial court for an in camera inspection along with a history of the discovery dispute regarding the documents.
 {¶ 54} The Cuyahoga County Court of Appeals found this was insufficient to demonstrate the documents were protected by R.C. 2905.253. The court found City View presented no evidence indicating the record were prepared by or for the use of a peer review committee or that the records were within the scope of the functions of the committee. The mere use of the title "investigation report" or "incident statement" is insufficient to demonstrate the reports were actually incident reports prepared for use by City View's peer review committee. The court also faulted City View for presenting no evidence it even had a peer review committee which performed any of the functions identified in R.C. 2305.25.
 {¶ 55} The Cuyahoga County Court of Appeals found a party asserting the privilege set forth in R.C. 2905.253 has the burden of establishing the privilege is applicable, Rinaldi at paragraph 22, citations deleted.
 {¶ 56} Likewise, in the case of Wilson v. BarnsvilleHospital, 151 Ohio App. 3d 55, 2002-Ohio-5186, 783 N.E. 2d 554, the Court of Appeals for Belmont County struggled with the question of which records were protected from discovery. The court found the records included (1) records and transcripts of proceedings of the review committee, (2) evidence produced or presented at the proceedings unless the evidence was available to the subpoenaed witness in some other capacity other than as a member of the committee, and (3) any finding, recommendation, evaluation, opinion, or other action.
 {¶ 57} The Wilson case was an action for negligent credentialing. The hospital submitted a description of the contents of the credentialing file to the court and moved for a protective order.
 {¶ 58} The Wilson court said the parties agree the statute seeks to prevent a plaintiff from delving into the actual process of credentialing, and into the opinions and evaluations of the reviewing members. However, the hospital contended any information that has been gathered, regardless of the source, is unavailable once it is placed in the credentialing file. TheWilson court found this was too broad a reading of the statute.
 {¶ 59} This court has been unwilling to read the statute as narrowly as the courts supra. In Huntsman v. Aultman Hospital,160 Ohio App.3d 196, 2005-Ohio-1482, we found if a trial court orders a hospital to give the appellee information from which the documents can be identified, it has perforce disclosed what documents the peer review committee used. As such, we found the trial court in Huntsman erred when it ordered Aultman Hospital to provide a list of the documents to appellee. Huntsman also involved a claim of negligent credentialing.
 {¶ 60} In Trangle v. Rojas, 150 Ohio App.3d 549,2002-Ohio-6510, the Cuyahoga court of appeals found the names of the individuals who provided information to the peer review committee were not discoverable because the persons could not testify, and as such, disclosure of their names would not lead to relevant evidence. However, the fact a person served on the committee did not bar the plaintiff from deposing him or her on other functions. See also, Whiteman v. Rawitscher, Lucas Appellate No. L-021-383, 2002-Ohio-4966, which held proceedings are an official record of things said or done, so testimonial immunity applies only to members of the committee or attendees at a committee meeting and then only concerning matters presented, the committee's deliberations, and its conclusions. Testimonial privilege does not apply to witnesses and committee members who may have personal knowledge of events outside of the information acquired from committee attendance.
 {¶ 61} The issue before us is much narrower. We find as a bare minimum, the party claiming the privilege must bring to the court's attention the existence of such a committee and show the committee investigated the case in question. Because at least one of the persons appellee Smith inquired about was a named defendant, Manor Care should have presented evidence this person was a member of the committee or participated in its investigation. The party claiming the privilege must provide the court with a list of the evidence the peer review committee had. These we find are prerequisite to invoking the privilege, and the mere disclosure of this information does not violate either the spirit or the literal reading of the statute.
 {¶ 62} Furthermore, not every inquiry made by a peer constitutes a peer review, and not every question a committee member asks necessarily leads to information to be used by the committee. An example may well be Airhart's reaction to the news of Mr. Mathis' death, or what she said when she crumpled up the first statements from Boykins and the aide. The act of crumpling up the statements and requesting new ones may well demonstrate the reports were not to be used in the committee's review. In the deposition, Appellee Smith's attempt to ask Boykins what concerns she herself had regarding the inquiry into Mathis' death appears to be information from the original source.
 {¶ 63} Manor Care argues the trial court borrowed the list of requirements from Section 11112(a) and (b), Title 42, U.S. Code, the federal Health Care Quality Improvement Act of 1986. We agree with Manor Care the statute is not applicable here, but nevertheless it is instructive and the court did not commit prejudicial error in using it as a resource.
 {¶ 64} We find appellant did not demonstrate excusable neglect and did not show it had either a meritorious claim or defense justifying relief from judgment. The trial court did not err in overruling the motion for relief from judgment.
 {¶ 65} Accordingly, the third assignment of error is overruled.
 IV. {¶ 66} For the reasons stated in III, supra, we find appellant's fourth assignment of error is not well taken. InCalb v. Moorehead (1995), 100 App. 3d 696, 654 N.E. 2d 1039, the 4th District Court of Appeals for Scioto County reviewed a case wherein the court granted a protective order pursuant to R.C. 2305.25. The court of appeals reversed, finding while some of the requested material might be subject to a protective order, the record did not disclose what material is properly discoverable and what was not. The Court of Appeals attached an appendix to its opinion which lists twelve rather specific items in dispute.
 {¶ 67} We find the trial court did not err in denying the motion for protective order which asked for a blanket order rather than providing the court with information which would permit it to determine whether an in camera examination would be appropriate. As noted supra, the court had nothing to examine.
 {¶ 68} The fourth assignment of error is overruled.
 V. {¶ 69} The final assignment of error relates to the court's overruling of the motion for reconsideration of its decision not to issue a protective order. Manor Care argues the court erred in denying the motion for reconsideration or in the alternative, relief from judgment. Appellant urges a motion for reconsideration was appropriate because a discovery order is generally interlocutory. We have found supra, the statute specially states discovery orders of this kind are final judgments. Thus, the motion for reconsideration can only be treated as a motion for relief from judgment brought pursuant to Civ. R. 60 (B).
 {¶ 70} The motion for reconsideration or in the alternative for relief from judgment does not state any ground articulated in Civ. R. 60(B), although for the first time Manor Care attached an affidavit of the Regional Director, outlining the peer review process in place at the time of Mr. Mathis' death.
 {¶ 71} Where, as here, the committee members have dual functions, both as committee members and also as supervisors of the staff or facility, there may well be some overlap of information, but this does not render the information undiscoverable if it was received as part of their supervisory duties, Trangle; Whiteman, supra, or simply as occurrence witnesses. Manor Care again asks for a blanket order denying appellee Smith any information on the presumption that all information gathered by any committee member is automatically privileged and this is too broad a reading of the statute.
 {¶ 72} We find the motion does not meet the requirements ofGTE Automatic Electric, supra, and was not specific enough to invoke the privilege. Accordingly, the trial court did not err in overruling it.
 {¶ 73} The fifth assignment of error is overruled.
 {¶ 74} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Gwin, P.J., Hoffman, J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellants.