MANLEY, Appellee,

v.

HEATHER HILL, INC., Appellant.

[Cite as *Manley v. Heather Hill, Inc.*, 175 Ohio App.3d 155, 2007-Ohio-6944.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 2007–G–2765.

Decided Dec. 21, 2007.

---

Blake A. Dickson, for appellee.

Steven J. Forbes and Michael L. Golding, for appellant.

MARY JANE TRAPP, Judge.

{¶ 1} Appellant, Heather Hill, Inc., d.b.a. Heather Hill Hospital ("Heather Hill"), appeals the judgment entered by the Geauga County Court of Common Pleas that ordered, for the purposes of an in camera inspection inter alia, the production of incident reports relating to the injuries sustained by Patricia Manley ("Mrs. Manley"), deceased, as well as witness statements and certain injury reports of other patients. For the reasons that follow, we affirm.

{¶ 2} *Statement of Facts and Procedural History*

{¶ 3} This appeal stems from injuries sustained by Mrs. Manley while she was a patient at Heather Hill. Mrs. Manley had been admitted to Heather Hill on several prior occasions and had suffered a number of falls there. One such fall

occurred on November 14, 2002, and as a result of this fall, Mrs. Manley fractured her left femur and left hip. Following surgery, Mrs. Manley developed an infection, which eventually required an above-the-knee amputation. Ultimately, on May 23, 2004, Mrs. Manley died.

{¶ 4} On February 23, 2006, Mrs. Manley's daughter, Cynthia Manley ("Ms. Manley"), executor of the estate of Mrs. Manley, filed a complaint against Heather Hill, alleging that Heather Hill was negligent in its care of Mrs. Manley and that that negligence proximately caused her death.[1] Heather Hill denied the allegations in the complaint.

{¶ 5} During the course of discovery, Ms. Manley sought several documents from Heather Hill, including, among other things, the production of any "incident reports" relating to Mrs. Manley, witness statements, and the identity of other patients who had sustained injuries at Heather Hill. Heather Hill refused to provide these documents, claiming that the documents were either protected by privilege or work product or were nondiscoverable under the peer-review statutes set forth in R.C. 2305.252 and 2305.253. Ms. Manley filed a motion to compel.

{¶ 6} The trial court granted the motion to compel and ordered the production of any incident reports relating to Mrs. Manley, provided that they were not prepared for peer-review purposes, and ordered an in camera inspection to make this determination. With respect to witness statements that were claimed to be subject to the peer-review privilege, the trial court ordered Heather Hill to provide the name of the witnesses and the length of the statements. In addition, the trial court ordered that upon Ms. Manley's request, those statements would be submitted to the court for an in camera review. The trial court also ordered that reports of injuries pertaining to other patients be produced by Heather Hill. Although the patients' names were to be redacted, Ms. Manley was to be provided with a brief description of the incidents and injuries covering the period of time of up to five years prior to Mrs. Manley's death.

{¶ 7} On March 8, 2007, Heather Hill filed a motion for reconsideration and clarification of the trial court's February 13, 2007 order granting Ms. Manley's motion to compel. Attached to this motion was the affidavit of Ella Barney, Vice President of Clinical Services at Heather Hill from August 2002 until January 31, 2004. She averred that in her position, she reviewed incident reports prepared by Heather Hill staff and that those reports were "prepared for use by [the] Quality Assurance Committee at Heather Hill."

{¶ 8} On March 15, 2007, Heather Hill filed the instant appeal. Heather Hill raises two assignments of error:

---

1. The complaint was originally filed on October 30, 2003, but was dismissed and refiled after Mrs. Manley's death.

{¶ 9} "[1.] The trial court abused its discretion in issuing an Order for an *in camera* inspection of incident reports regarding Patricia Manley because the incident reports are protected from discovery under Ohio Revised Code § 2305.253.

{¶ 10} "[2.] The trial court abused its discretion in issuing an Order to provide descriptions of injuries to other residents because such information is protected against discovery by the Ohio Peer Review Statutes."

{¶ 11} *Standard of Review*

■ {¶ 12} We review a trial court's discovery orders under an abuse-of-discretion standard. *Simeone v. Girard City Bd. of Edn.,* 171 Ohio App.3d 633, 2007-Ohio-1775, 872 N.E.2d 344, at ¶ 21. Abuse of discretion " 'connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court.' " *Quonset Hut, Inc. v. Ford Motor Co.* (1997), 80 Ohio St.3d 46, 47, 684 N.E.2d 319, quoting *Pembaur v. Leis* (1982), 1 Ohio St.3d 89, 91, 1 OBR 125, 437 N.E.2d 1199.

{¶ 13} *The Peer–Review Privilege*

{¶ 14} R.C. 2305.252 and 2305.253 set forth Ohio's peer-review statutes. R.C. 2305.252 provides the general policy that "[p]roceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider * * *." The statute also provides that individuals who attend, provide information to, or serve on peer-review committee meetings are not required to testify in a civil action as to any evidence or other matters produced or presented during the proceedings of the peer-review committee.

{¶ 15} R.C. 2305.253 provides that incident reports and risk-management reports are privileged documents that are nondiscoverable. The statute states:

{¶ 16} "(A) Notwithstanding any contrary provision of * * * the Revised Code, *an incident report * * * and the contents of an incident report or risk management report are not subject to discovery* in, and are not admissible in evidence in the trial of, a tort action. An individual who prepares or has knowledge of the contents of an incident report or risk management report shall not testify and shall not be required to testify in a tort action as to the contents of the report." (Emphasis added.)

{¶ 17} R.C. 2305.25(D) defines an "incident report" as "a report of an incident involving injury or potential injury to a patient as a result of patient care provided by health care providers, including both individuals who provide health care and entities that provide health care, *that is prepared by or for the use of a*

*peer review committee of a health care entity* and is within the scope of the functions of that committee." (Emphasis added.)

{¶ 18} R.C. 2305.25(E)(1) defines "peer review committee" as follows:

{¶ 19} " 'Peer review committee' means a utilization review committee, quality assessment committee, performance improvement committee, tissue committee, credentialing committee, or other committee that does either of the following:

{¶ 20} "(a) Conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care;

{¶ 21} "(b) Conducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions."

{¶ 22} In order to invoke the peer-review privilege, it is incumbent upon the defendant to establish that the documents being sought were prepared by or for the use of a peer-review committee. *Rinaldi v. City View Nursing & Rehab. Ctr., Inc.,* 8th Dist. No. 85867, 2005-Ohio-6360, 2005 WL 3215146, ¶ 20. Thus, "[a] party asserting the privilege set forth in R.C. 2305.253 has the burden of establishing that the privilege is applicable." Id. at ¶ 22. At "a bare minimum, the party claiming the privilege must bring to the court's attention the existence of such a [peer-review] committee and show the committee investigated the case in question." *Smith v. Manor Care of Canton, Inc.,* 5th Dist. Nos. 2005–CA–00100, 2005–CA–00160, 2005–CA–00162, and 2005–CA–00174, 2006-Ohio-1182, 2006 WL 636975, at ¶ 61. The party asserting the privilege must also show that the documents sought were incident reports prepared for use by a peer-review committee. *Quinton v. MedCentral Health Sys.,* 5th Dist. No. 2006CA0009, 2006-Ohio-4238, 2006 WL 2349548, at ¶ 26.

{¶ 23} *In Camera Inspection of and Disclosure of "Incident Reports"*

{¶ 24} In its first assignment of error, Heather Hill claims that the trial court abused its discretion by ordering an in camera inspection of Mrs. Manley's incident reports. Specifically, Heather Hill objects to the following order regarding the in camera review of and possible disclosure of incident reports relating to Mrs. Manley:

{¶ 25} "Plaintiff seeks copies of incident reports pertaining to Mrs. Manley; the Court orders these produced if not a record for peer review purposes as opposed to the patient's medical record, per # 3 D above [regarding witness statements]. The procedure outlined in # 3 D to provide copies for *in camera* inspection applies."

{¶ 26} Heather Hill argues that the incident reports Ms. Manley seeks are, by definition, peer-review documents that are neither subject to an in camera inspection nor discoverable. Thus, Heather Hill maintains that "'incident reports' are protected against discovery under the peer review privilege without the need for an *in camera* inspection."

{¶ 27} At the outset, we note that part of the confusion in this case stems from the fact that the parties and the trial court refer to the documents sought as "incident reports." As evidenced by the italicized language above, the statutory definition of "incident report" is limited in its scope to documents "prepared by or for the use of a peer review committee" and does not encompass every injury report recorded. Thus, the fact that a document is referred to as an "incident report" or describes an injury or incident does not necessarily mean that it falls within the statutory definition of "incident report." See, e.g., *Rinaldi*, 2005-Ohio-6360, 2005 WL 3215146, ¶ 20, in which the court reiterated that simply labeling documents as "investigation reports" or as "incident statements" "is insufficient to demonstrate that the reports were incident reports actually prepared for use by [the] peer review committee." Only a document prepared by, or for the use of, a peer-review committee is deemed an "incident report" and is considered privileged and nondiscoverable. (R.C. 2305.253.) Conversely, if the documents fall within the statutory definition of an incident report, then pursuant to R.C. 2305.253, they are nondiscoverable.

{¶ 28} With these principles in mind, we find that there is no evidence in the record to establish that the documents sought were prepared for use by a peer-review committee or that there was in fact a peer-review committee at Heather Hill. Although Heather Hill attempts to rely on the affidavit of its Vice President of Clinical Services, in which she stated that she had reviewed incident reports prepared by Heather Hill staff and that those reports were "prepared for use by [the] Quality Assurance Committee at Heather Hill," this affidavit was attached to Heather Hill's motion for reconsideration and was not considered by the trial court. Nor can we consider it.

{¶ 29} As the court noted in *Manor Care of Canton, Inc.*, 2006-Ohio-1182, 2006 WL 636975, ¶ 40, when an order to produce records is made pursuant to R.C. 2305.252, that order is a final, appealable order. Thus, "[t]he Civil Rules do not provide for a motion for reconsideration of a final appealable order, * * * [and] this court has no jurisdiction to review the motion for reconsideration." Id. at ¶ 40–41. Because the trial court's order in this case was a final order, as expressly stated in R.C. 2305.252, Heather Hill's motion for reconsideration was in effect a nullity; thus, the affidavit attached to this motion is not part of the record for review. Absent any evidence showing that there was in fact a peer-review committee or that the documents were prepared for peer-review purposes,

we find that the trial court approached the manner cautiously by ordering an in camera inspection.

{¶ 30} Heather Hill, however, claims that the peer-review statutes preclude an in camera review. We disagree. There is nothing in the peer-review statutes that forbids a trial court from holding an in camera review to determine whether documents are privileged. The peer-review statutes were amended in 2003. Although the current statutes are couched in stronger language than their predecessors, the statutes do not state that an in camera review of the documents sought is disallowed. Had the General Assembly intended to preclude an in camera review, it could have included that language in the amended statutes, but it did not. It is a fundamental rule of statutory construction that when the meaning of a statute is unambiguous, "it must be applied as written and no further interpretation is necessary. Unambiguous statutes are to be applied according to the plain meaning of the words used, and courts are not free to delete or insert other words." *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, 852 N.E.2d 706, at ¶ 18. (Citations omitted.)

{¶ 31} In this regard, we would be remiss if we did not address our previous decision in *Tenan v. Huston*, 165 Ohio App.3d 185, 2006-Ohio-131, 845 N.E.2d 549. In *Tenan*, a negligent credentialing case decided under the former peer-review statutes, the majority mistakenly stated that the new statutes prohibit an in camera review and that the General Assembly "essentially built an impenetrable wall of secrecy around all peer review documents, participants, and proceedings." Id. at ¶ 32. The majority then determined that the current statutes could not be applied retroactively. Id. at ¶ 39.

{¶ 32} Upon closer analysis, we do not believe that the current statutes prohibit an in camera review when the record is devoid of evidence to establish that the records sought are in fact "incident reports" within the statutory definition of R.C. 2305.25(D). Nor do we believe that the General Assembly intended to render all documents privileged or impenetrable under these statutes. Only those documents that fall within the limited statutory definition of an "incident report" are shielded from discovery. *Tenan*, therefore, should not be relied upon for these broad propositions, which are essentially dicta.

{¶ 33} Heather Hill cites several decisions to support its position that an in camera review is not allowed. *Doe v. Mt. Carmel Health Sys.*, 10th Dist. No. 05AP–435, 2005-Ohio-6966, 2005 WL 3547970; *Cook v. Toledo Hosp.*, 169 Ohio App.3d 180, 2006-Ohio-5278, 862 N.E.2d 181; *Quinton*, 2006-Ohio-4238, 2006 WL 2349548; *Manor Care of Canton, Inc.*, 2006-Ohio-1182, 2006 WL 636975; *DePaul v. St. Elizabeth Health Ctr.*, 7th Dist. No. 03 MA 137, 2004-Ohio-4992, 2004 WL 2334370; *Huntsman v. Aultman Hosp.*, 160 Ohio App.3d 196, 2005-Ohio-1482, 826 N.E.2d 384. However, these decisions lend little support to Heather Hill's

position. In those cases in which the trial courts conducted an in camera review, the appellate courts did not discuss whether an in camera review was in fact prohibited. In *Manor Care of Canton, Inc.*, the trial court did not conduct an in camera review, but the Fifth Appellate District found that because Manor Care did not submit documents for inspection, there was no material with which to conduct an in camera review. *Manor Care of Canton, Inc.* at ¶ 32.

{¶ 34} The court in *Huntsman* held that "[t]he current version of [R.C. 2305.252] makes it clear that there is no need for an in camera inspection because no documents can be obtained from the peer review committee records, only from the records of the original source." *Huntsman,* 160 Ohio App.3d 196, 2005-Ohio-1482, 826 N.E.2d 384, ¶ 20. However, *Huntsman* is factually distinguishable from the instant case. In *Huntsman*, the plaintiff sought documents that were contained in the hospital's credentialing and peer-review files, whereas here, there is no evidence that the documents were prepared for peer-review purposes, yet alone contained within such files.

{¶ 35} Heather Hill's reliance on *Quinton* is also misplaced. In *Quinton,* the court held that the trial court had abused its discretion in ordering the production of an incident report. However, contrary to Heather Hill's assertion, there was absolutely no discussion as to whether the peer-review statutes preclude an in camera review. Furthermore, the *Quinton* court based its holding on the fact that "there was evidence [an affidavit] provided by appellant that the report in this case was an incident report prepared for use by a peer review committee." *Quinton,* 2006-Ohio-4238, 2006 WL 2349548, ¶ 26. Thus, it found that the document was per se nondiscoverable. The *Quinton* court distinguished its facts from that of *Rinaldi,* supra, in which the Eighth District upheld the trial court's order requiring the defendant to produce certain documents after it conducted an in camera inspection. In *Rinaldi,* the court found that it was insufficiently demonstrated that the documents were, in fact, incident reports, and further, that the defendant "presented no evidence to the trial court that it even had a peer review committee that performed any of the functions identified in R.C. 2305.25(E) or would review the documents at issue. * * * [Defendant] having failed to adduce any evidence whatsoever to establish the privilege, we cannot find that the trial court abused its discretion in ordering it to produce the documents to Rinaldi." *Rinaldi,* 2005-Ohio-6360, 2005 WL 3215146, ¶ 21–22.

{¶ 36} The instant case is more similar to *Rinaldi* than *Quinton,* since in this case there was no evidence presented to show that the records sought were incident reports, i.e., documents prepared by or for the use of a peer-review committee, or that there was a peer-review committee in existence. In fact, the trial court recognized that there was a dispute as to whether the records were prepared in connection with the peer-review process and ordered an in camera

inspection to review the records sought. Ordering an in camera inspection was therefore the means by which the trial court would be able to determine whether the documents were in fact privileged. The trial court understood that "not every inquiry made by a peer constitutes a peer review, and not every question a committee member asks necessarily leads to information to be used by the committee." *Manor Care of Canton*, 2006-Ohio-1182, 2006 WL 636975, ¶ 62. When, as here, it is unclear whether the documents sought were in fact prepared for use by a peer committee and when the existence of such a committee is at issue, we find that the trial court acted within its discretion in utilizing the in camera review process to determine whether the peer-review privilege applies.

{¶ 37} Our holding is consistent with other areas where the issue of privilege has been raised, such as in the context of the attorney-client or physician-patient privilege, and where courts have used the in camera process in order to determine whether such documents are privileged or whether they should be ordered to be produced. The underlying rationale for holding an in camera inspection "serves two functions: 'first, it allows the trial court to make an informed decision as to the evidentiary nature of the material in question rather than depending on the representations of counsel. Secondly, the in-camera inspection allows the trial court to discern that aspect of the evidence, which has evidentiary value from that which does not, as well as to allow the trial court to restrict the availability of that evidence, which has limited evidentiary value.'" *Sweet v. Sweet*, 11th Dist. No. 2004–A–0062, 2005-Ohio-7060, 2005 WL 3610481, at ¶ 13 (in which the physician-patient privilege was raised when a request for production of medical records was sought), quoting *Patterson v. Zdanski*, 7th Dist. No. 03 BE 1, 2003-Ohio-5464, 2003 WL 22339492, ¶ 18.

{¶ 38} We believe that this rationale applies with equal force to instances where the peer-review privilege is raised and where insufficient proof is presented that the documents sought fall within the statutory definition of incident reports, prepared for use by a peer-review committee. Because an in camera review was necessary in this case for the trial court to determine whether the records sought are privileged, we find no abuse of discretion in the trial court's ordering of an in camera inspection of the records sought.

{¶ 39} Heather Hill's first assignment of error is overruled.

{¶ 40} *Production of Other Patients' Injury Reports*

{¶ 41} In its second assignment of error, Heather Hill contends that the trial court abused its discretion by ordering the production of injury reports of other patients. Again, Heather Hill claims that these reports are privileged under R.C. 2305.252 and 2305.253.

{¶ 42} The trial court's order states:

{¶ 43} "The Court will not order release of patients' names but Plaintiff is entitled to reports of injuries, including a description of the event and injury. A period of five years preceding the patient's death in this case does not seem unreasonable."

{¶ 44} There is no indication that the information sought is contained in an incident report, as alleged by Heather Hill. In this respect, Heather Hill's reliance on the *Cook v. Toledo Hosp.* decision is without merit. In *Cook*, 169 Ohio App.3d 180, 2006-Ohio-5278, 862 N.E.2d 181, the court reversed the trial court's judgment ordering production of patient care incident reports. Because the documents were incident reports, the *Cook* court was warranted in holding that they were privileged. Absent any showing that the injury reports fall within the statutory definition of "incident report," we are unwilling to say that the trial court's order was an abuse of discretion.

{¶ 45} In conclusion, the trial court did not abuse its discretion by ordering Heather Hill to produce reports of injuries sustained by other patients.

{¶ 46} Heather Hill's second assignment of error is without merit.

{¶ 47} The judgment of the Geauga County Court of Common Pleas is affirmed.

Judgment affirmed.

RICE, P.J., and O'TOOLE, J., concur.