[Cite as *Fravel v. Columbus Rehab. & Subacute Inst.*, 2016-Ohio-5807.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


Richard Fravel,                                    :

      Plaintiff-Appellee,                    :

v.                                                 :          No. 16AP-270
                                                              (C.P.C. No. 14CVC-7216)
Columbus Rehabilitation and                        :
Subacute Institute et al.,                                    (REGULAR CALENDAR)
                                                   :
      Defendants-Appellants.                 :

                                                   :

---

D E C I S I O N

Rendered on September 13, 2016

---

**On brief:** *The Dickson Firm, L.L.C., Blake A. Dickson,* and *Daniel Z. Inscore,* for appellee. **Argued:** *Blake A. Dickson.*

**On brief:** *Bonezzi Switzer Polito & Hupp Co., L.P.A., G. Brenda Coey,* and *Jennifer R. Becker,* for appellants. **Argued:** *G. Brenda Coey.*

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendants-appellants, Columbus Rehabilitation and Subacute Institute et al., appeal from a judgment of the Franklin County Court of Common Pleas, which entered a judgment granting in part and denying in part four motions to compel discovery filed by plaintiff-appellee, Richard Fravel, as the personal representative of the estate of his father, Jack Fravel ("decedent"). For the following reasons, we affirm the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In May 2013, following a two-month hospitalization for a ruptured brain aneurism, decedent became a resident of Columbus Rehabilitation and Subacute Institute nursing home in Columbus. On July 10, 2014, appellee filed a complaint against

appellants alleging wrongful death and negligence on behalf of the estate of the decedent. Appellee generally alleged that, due to the inadequate care of the nursing home, the decedent developed a pressure ulcer that became infected and resulted in his death on January 1, 2014.

{¶ 3} On December 12, 2014, appellee propounded his first request for production of documents, including a request for all quality indicator reports and facility key indicator reports. Appellants provided a privilege log that, in pertinent part, objected to the production of the quality indicator reports and facility key indicator reports due to R.C. 2305.252 peer review privilege. On July 8, 2015, appellants filed four motions to compel production of various documents, including the quality indicator reports and facility key indicator reports. In its motion to compel, appellee asserted that appellants, and specifically the information provided in the deposition of nursing home representative Steven Howard, did not satisfy any of the prerequisites for asserting a peer review privilege under R.C. 2305.252.

{¶ 4} On March 22, 2016, the trial court rendered a decision and entry granting in part and denying in part appellee's four motions to compel discovery.[1] Regarding the quality indicator reports and key facility indicator reports, the trial court found that:

> [T]he various reports requested by [appellee] are not subject to privilege, but [appellee's] request is overly broad. As such, it is hereby ORDERED that [appellants] shall provide [appellee] with any * * * quality indicator reports, and facility key indicator reports in their possession for the year before [decedent's] admission within fourteen (14) days of the date of the filing of this decision.

(Mar. 22, 2016 Decision & Entry at 3-4.)

{¶ 5} On April 4, 2016, appellants filed a motion for reconsideration with the trial court concerning the quality indicator reports and key facility indicator reports, which included a new affidavit of Howard dated April 1, 2016. Four days later, on April 8, 2016, appellants filed a timely appeal from the trial court's March 22, 2016 judgment.

---

[1] An intermediate appeal occurred prior to the trial court's decision on the present motion to compel the quality indicator reports and facility key indicator reports. On December 10, 2015, in *Fravel v. Columbus Rehab. & Subacute Inst.*, 10th Dist. No. 15AP-782, 2015-Ohio-5125, we addressed issues unrelated to this appeal regarding an alleged arbitration agreement and the production of certain policies and procedures protected by copyright.

## II.  ASSIGNMENT OF ERROR

{¶ 6}  Appellants raise one assignment of error:

THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S-APPELLEE'S MOTION TO COMPEL THE QUALITY INDICATOR REPORTS AND FACILITY KEY INDICATOR REPORTS BECAUSE THE REPORTS ARE STATUTORILY PROTECTED UNDER R.C. 2305.252(A)

## III.  STANDARD OF REVIEW

{¶ 7}  An appellate court typically reviews discovery disputes under an abuse-of-discretion standard.  *Summit Park Apts., LLC v. Great Lakes Reinsurance (UK), PLC*, 10th Dist. No. 15AP-820, 2016-Ohio-1514, ¶ 12, quoting *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, ¶ 13, citing *Tracy v. Merrell Dow Pharmaceuticals, Inc.*, 58 Ohio St.3d 147, 151-52 (1991).  However, discovery issues that involve an alleged privilege are a question of law reviewed de novo on appeal.  *Id.*, quoting *Ward* at ¶ 13, citing *Med. Mut. Of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13.  When reviewing such questions of law, deference should still be afforded to "factual issues * * * determined by the trial court as a predicate to resolving the legal question of privilege."  *Summit Park Apts.* at ¶ 12, citing *MA Equip. Leasing I, LLC v. Tilton*, 10th Dist. No. 12AP-564, 2012-Ohio-4668, ¶ 18.

## IV.  DISCUSSION

{¶ 8}  Under their assignment of error, appellants argue that the trial court erred in determining that the quality indicator reports and facility key indicator reports are not privileged under R.C. 2305.252 and ordering appellants to produce such reports in discovery.  For the following reasons, we disagree.

{¶ 9}  In pertinent part, R.C. 2305.252(A) provides:

Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider, including both individuals who provide health care and entities that provide health care, arising out of matters that are the subject of evaluation and review by the peer review committee.

> Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, but the information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records.
>
> * * *
>
> An order by a court to produce for discovery or for use at trial the proceedings or records described in this section is a final order.

{¶ 10} "A health care entity asserting the R.C. 2305.252 privilege bears the burden of establishing the applicability of the privilege." *Bansal v. Mt. Carmel Health Sys.*, 10th Dist. No. 09AP-351, 2009-Ohio-6845, ¶ 14. To prove R.C. 2305.252 privilege, a health care provider must (1) establish the existence of a committee that meets the statutory definition of "peer review committee" contained in R.C. 2305.25(E), and (2) establish that each of the documents that it refuses to produce in response to a discovery request is a "record[] within the scope of a peer review committee" under R.C. 2305.252. *Id.* at ¶ 15.

{¶ 11} Appellants point to Howard's affidavit and deposition to establish both the existence of a quality assurance committee fitting the definition of a peer review committee and establish that the documents at issue are records within the scope of that committee. As a preliminary issue, we must decide whether we may consider the information contained in the affidavit of Howard, which was attached to appellants' motion for reconsideration to the trial court. Appellants contend that we should consider this affidavit in resolving the assignment of error because the affidavit was filed before the notice of appeal and is, therefore, part of the record.

{¶ 12} We first note that appellants do not point us to authority to support this position, infringing App.R. 16(A)(7). *Abraham v. BP Exploration & Oil, Inc.*, 149 Ohio App.3d 471, 2002-Ohio-4392, ¶ 32 ("Pursuant to App.R. 16(A)(7), plaintiffs must present their contentions with respect to each assignment of error presented for review and the reasons in support of the contentions with citations to the authorities, statutes, and parts of the record on which they rely.").

{¶ 13} Regardless, we do not believe that it is appropriate to consider, in the first instance, allegations of facts which were not before the trial court when it rendered its decision here. Under App.R. 9(A)(1), the composition of the record on appeal consists of "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court." Thus, in the literal sense, the record on appeal here contains the newly submitted affidavit of Howard.

{¶ 14} However, it is well-settled that an appellate court cannot decide an appeal based on information that was not a part of the trial court's proceedings. *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 13. "Rather, appellate review is limited to the record as it existed at the time the trial court rendered its judgment." *Waterford Tower Condominium Assn. v. TransAmerica Real Estate Group*, 10th Dist. No. 05AP-593, 2006-Ohio-508, ¶ 13, citing *Chickey v. Watts*, 10th Dist. No. 04AP-818, 2005-Ohio-4974, ¶ 14.

{¶ 15} Furthermore, pursuant to R.C. 2305.252(A), an order of a court to produce records of an alleged peer review committee is a final order and, as such, any motion to reconsider submitted to the trial court thereafter is a nullity. *Legg v. Hallet*, 10th Dist. No. 07AP-170, 2007-Ohio-6595, ¶ 18; *Boulware v. Chrysler Group, L.L.C.*, 10th Dist. No. 13AP-1061, 2014-Ohio-3398, ¶ 13, quoting *Franklin Univ. v. Ellis*, 10th Dist. No. 13AP-711, 2014-Ohio-1491, ¶ 8 ("It is well-settled law that '[a] motion for reconsideration of a final judgment in a civil case is a nullity.' "); *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378 (1981), paragraph one of the syllabus ("The Ohio Rules of Civil Procedure do not prescribe motions for reconsideration after a final judgment in the trial court."). A legal nullity by definition is something that "never occurred." *PNC Bank, N.A. v. J & J Slyman, L.L.C.*, 8th Dist. No. 101777, 2015-Ohio-2951, ¶ 20. Thus, an appellate court cannot consider an affidavit attached to a motion for reconsideration filed after an order to produce records alleged as privileged under R.C. 2305.252. *Manley v. Heather Hill, Inc.*, 175 Ohio App.3d 155, 2007-Ohio-6944, ¶ 28 (11th Dist.) (finding it could not consider the affidavit attached to a motion for reconsideration filed after an order to produce records alleged as privileged under R.C. 2305.252 because the affidavit was not considered by the trial court and the motion for reconsideration was a nullity). Therefore, based on the

above, to resolve the assignment of error we will not consider the affidavit of Howard attached to the motion for reconsideration in assessing whether appellants met their burden in establishing a privilege under R.C. 2305.252.

{¶ 16} As previously stated, appellants must first establish the existence of a peer review committee. R.C. 2305.25(E)(1) defines a "[p]eer review committee" as:

> [A] utilization review committee, quality assessment committee, performance improvement committee, tissue committee, credentialing committee, or other committee that does either of the following:
>
> (a) Conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care;
>
> (b) Conducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions.

{¶ 17} "Ohio courts have been adamant that merely labeling a committee * * * 'peer review' is insufficient to meet the burden of proving that the privilege applies." *Smith v. Cleveland Clinic*, 197 Ohio App.3d 524, 2011-Ohio-6648, ¶ 23 (8th Dist.) (finding blanket statement in doctor's affidavit insufficient to meet burden that a peer review committee exists). Likewise, a health care facility that merely provides testimony that it has a quality assurance process does not meet its burden of establishing that it had a peer review committee under R.C. 2305.252. *Giusti v. Akron Gen. Med. Ctr.*, 178 Ohio App.3d 53, 2008-Ohio-4333, ¶ 21, 24-26 (9th Dist.). Furthermore, the fact that a facility accessed materials generated by the Ohio Department of Health ("ODH") alone does not affirmatively establish the existence of a peer review committee. *Bansal* at ¶ 17 ("we conclude that documents sought from a health care entity are peer review records if the health care entity proves that those documents were created by and/or exclusively for a peer review committee"); *Large v. Heartland-Lansing of Bridgeport Ohio, LLC*, 7th Dist. No. 12 BE 7, 2013-Ohio-2877, ¶ 1, 35, *discretionary appeal not allowed*, 137 Ohio St.3d 1413, 2013-Ohio-5096.

{¶ 18} Here, appellants contend that, regardless of the affidavit, Howard testified during the deposition that the facility had a quality assurance committee of the type that would meet the definition of a peer review committee as defined in R.C. 2305.25(E)(1). Appellants point us to pages 44 through 46 of the deposition in support of this contention. In pertinent part, the cited testimony reads:

A.  Yes [the facility had Resident Concern Forms].

* * *

Q.  And where would they go?

A.  It would go through the QA process.

Q.  And who else would look at it?

A.  The department heads.

Q.  The department heads would look at it?

A.  Uh-huh, to seek resolutions and actions as necessary.

Q.  Okay. Did the facility maintain quality indicator reports?

A.  Well, we had access to them.

Q.  From the Department of Health?

A.  Yes.

* * *

Q.  Okay.  What about facility key indicator reports?

A.  Facility key indicator reports?  I'm not sure what that is.

Q. So some facilities maintain a facility key indicator report for, like, falls, wounds, infections, fevers, hospitalizations and they just track data about the resident.  Did they maintain anything like that at that facility?

A. That was done weekly.  That was part of my -- well, not them.  But as a DON, it's part of the DON position.

Q. Okay. And what was it called?

A. It was just a reporting tool.

Q. And who was it submitted to?

A. It was through the -- it would go through the QA process again.

Q. Okay. Did it go to anybody at corporate?

A. The weekly? No.

Q. Okay. Did any report about patient care or the condition of a resident go to corporate?

A. To the regional? If there was a -- yeah. Like a sentinel event, something like that, yes.

* * *

Q. And you said you had access to the QI reports. Did the facility access them? Did they pull them?

A. I can't say if they did then.

Q. Okay.

A. I wasn't in that position then, so --

(June 18, 2015 Howard Dep. at 44-46.)

{¶ 19} The deposition testimony here establishes that the facility had a "QA process." (Howard Dep. at 44.) What this process entails and, more pointedly, whether it includes a quality assurance committee meeting the definition of a "peer review committee," as defined by R.C. 2305.25(E), is not clear. On the limited facts of this case, appellants have not met their burden in establishing the existence of a peer review committee for purposes of R.C. 2305.252. *Bansal* at ¶ 15. As a result, R.C. 2305.252 privilege does not apply.

{¶ 20} Appellants argue, in the alternative, that should we find the quality indicator reports are not privileged, appellee must obtain those documents from ODH as

the original source of the documents. Appellants cite to *Doe v. Mt. Carmel Health Sys.*, 10th Dist. No. 05AP-435, 2005-Ohio-6966, ¶ 16, in support of their position.

{¶ 21} Discussing "original sources," R.C. 2305.252(A) provides:

> Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, but the information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records.

{¶ 22} This court in *Doe* explained:

> As amended, R.C. 2305.252 clearly states that documents or records cannot be obtained from a peer review committee's proceedings or records. The documents or records are not completely outside the scope of discovery. Such documents and records are available from the original source of the information contained therein. However, the documents and records presented to a peer review committee fall within the privilege created by R.C. 2305.252.

*Id.* at ¶ 16.

{¶ 23} The plain language of the statute shows R.C. 2305.252(A) applies to protect the confidentiality of proceedings and records specifically with regard to peer review committees of a health care entity. *Large* at ¶ 34, quoting *Gates v. Brewer*, 2 Ohio App.3d 347, 349 (10th Dist.1981) (discussing the purpose of R.C. 2305.252 as protecting the " 'integrity of the peer review process' " to allow for " 'immediate' " improvements in " 'the quality of health care' "). The original source clause within R.C. 2305.252 promotes this purpose by not permitting parties to delve into a peer review committee's own records and proceedings to obtain documents otherwise discoverable from their original source. However, neither R.C. 2305.252 nor *Doe* impose a flat requirement—separate from a threat to the records of a peer review committee—that all discoverable documents must be obtained from their original source, if such an original source exists. *See, e.g.*, *Large* at ¶ 47 (concluding that a health care facility may be compelled to produce ODH documents not subject to a privilege). Considering the above, we find that, since appellants did not meet their burden in establishing the existence of a peer review

committee and, therefore, the privilege under R.C. 2305.252 does not apply, appellee is not required by R.C. 2305.252 to procure the quality indicator reports from ODH.

{¶ 24}  Accordingly, appellants' assignment of error is overruled.

## V.  CONCLUSION

{¶ 25} Having overruled appellants' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J., and BRUNNER, J., concur.

_____