[Cite as *Brahm v. DHSC, L.L.C.*, 2016-Ohio-1204.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| JAMES E. BRAHM, INDIVIDUALLY | : | Hon. Sheila G. Farmer, P.J. |
| AND AS EXECUTOR OF THE | : | Hon. W. Scott Gwin, J. |
| ESTATE OF MARY KATHLEEN | : | Hon. Patricia A. Delaney, J. |
| BRAHM | : | |
| | : | |
| Plaintiff-Appellee | : | Case No. 2015CA00165 |
| | : | |
| -vs- | : | |
| | : | OPINION |
| DHSC, LLC, DBA AFFINITY | | |
| MEDICAL CENTER, ET AL | | |
| | | |
| Defendant-Appellant | | |

CHARACTER OF PROCEEDING:    Civil appeal from the Stark County Court of
Common Pleas, Case No. 2014CV01545

JUDGMENT:    Dismissed

DATE OF JUDGMENT ENTRY:    March 21, 2016

APPEARANCES:

For Plaintiff-Appellee

STEPHEN P. GRIFFIN
MICHAEL J. KAHLENBERG
825 S. Main St.
North Canton, OH 44720

For Defendant-Appellant

RICHARD S. MILLIGAN
PAUL J. PUSATERI
THOMAS R. HIMMELSPACH
4684 Douglas Circle NW.
P.O. Box 35459
Canton, OH  44735-5459

*Gwin, J.*

**{¶1}** Appellant Aultman Hospital appeals the August 28, 2015 Judgment Entry of the Stark County Court of Common Pleas ordering the production of documents for an in camera inspection by the trial court to determine whether the documents are privileged or discoverable in whole or in part by the appellee, James E. Brahm, Individually and as Executor of the Estate of Mary Kathleen Brahm, Deceased.

*Facts and Procedural History*

**{¶2}** Mary Kathleen Brahm was a 72-year old woman when she was transported by EMS to Affinity Medical Center's emergency department on July 11, 2013. Mrs. Brahm was diagnosed with a STEMI—a ST segment elevation myocardial infarction. This is a cardiac emergency that requires immediate intervention. Therefore, the Cardiac Catheterization Department was called in emergently to provide care and Mrs. Brahm was brought to the catheterization lab.

**{¶3}** Co-Defendant-Appellant Joseph Surmitis, M.D. was the interventional cardiologist on call and was paged to perform the heart catheterization. During the procedure, Dr. Surmitis identified a complete occlusion of Mrs. Brahm's right coronary artery. He passed a wire through the occlusion, used a balloon to dilate the right coronary artery to eliminate the blockage and then placed a stent at the location of the prior occlusion. A second balloon was used to improve the performance of the stent.

**{¶4}** Following the deflation and removal of that balloon, Dr. Surmitis noted a perforation in the right coronary artery. He acted to stop the bleeding from this perforation and to address secondary complications caused by that blood leaking into the pericardium, which was compromising the function of the heart.

{¶5} Dr. Surmitis also paged the on-call cardiovascular surgeon Dr. Tawil to perform a procedure to repair the perforated vessel. Although Dr. Tawil was able to repair the vessel during his procedure, Mrs. Brahm passed away on July 12, 2013.

{¶6} Appellee Brahm commenced this medical negligence action on June 30, 2014 against DHSC, LLC, DBA, Affinity Medical Center, Dr. Joseph Surmitis, and others, seeking damages for injuries to, and the death of, his decedent, Mary Kathleen Brahm, allegedly caused by negligent medical care. The complaint alleged Mary Brahm underwent a coronary catheterization performed by Dr. Surmitis, and that during the procedure the walls of her coronary artery were torn.

{¶7} According to Affinity's nurse manager and coordinator of its catheterization lab, Affinity's protocols and procedures for the lab include and adopt the American College of Cardiology/Society for Cardiovascular Angiography and Interventions Expert Consensus Document of Cardiac Catheterization Laboratory Standards ["ACC Guidelines"]. The ACC Guidelines are a comprehensive statement of safe practices and minimum statistical requirements for facilities that maintain cardiac catheterization labs. Among others, it provides:

1. The annual minimum operator interventional procedural volume of 75 cases per year has become an acceptable standard.

2. At present, with overall in-hospital mortality averaging 2% and rates of emergent CABG averaging <1%, a composite major complication rate of <3% is to be expected

{¶8} Because Affinity had adopted and incorporated the ACC Guidelines within its own policies and protocols for the catheterization lab, Brahm sought discovery of the

statistical benchmarks to which the ACC and Affinity subscribe for its practitioners within the lab. Specifically, Brahm directed written discovery to Affinity and Dr. Surmitis seeking to learn:

1. Major In-Hospital Complication Rates, including morbidity/mortality rates, for all contemporary percutaneous coronary interventions for diagnostic procedures performed at Defendant's Catheterization Lab, by percentage relative to myocardial infarction.

2. Major In-Hospital Complication Rates, including morbidity/mortality rates, for all contemporary percutaneous coronary interventions for interventional/therapeutic procedures performed at Defendant's Catheterization Lab, by percentage relative to myocardial infarction.

3. Major In-Hospital Complication Rates, including morbidity/mortality rates, for all contemporary percutaneous coronary interventions for diagnostic procedures performed by Joseph M. Surmitis, M.D. at Defendant's Catheterization Lab, by percentage relative to myocardial infarction.

4. Major In-Hospital Complication Rates, including morbidity/mortality rates, for all contemporary percutaneous coronary interventions for interventional/therapeutic procedures performed by Joseph Surmitis, M.D. at Defendant's Catheterization Lab, by percentage relative to myocardial infarction.

5.      The number of contemporary percutaneous coronary interventions for diagnostic procedures performed by Joseph M. Surmitis, M.D. at Defendant's Catheterization Lab for each referenced calendar year.

6.      The number of contemporary percutaneous coronary interventions for interventional/therapeutic procedures performed by Joseph M. Surmitis, M.D. at Defendant's Catheterization Lab for each referenced calendar year.

{¶9}    Furthermore, because Dr. Surmitis practiced interventional cardiology at both Aultman Hospital and Mercy Medical Center, Brahm also issued subpoenas to those non-party institutions seeking to learn:

1.      Major In-Hospital Complication Rates, including morbidity/mortality rates, for all contemporary percutaneous coronary interventions for diagnostic procedures performed by Joseph M. Surmitis, M.D. at Mercy/Aultman's Main Campus Facility Catheterization Lab, by percentage relative to myocardial infarction.

2.      Major In-Hospital Complication Rates, including morbidity/mortality rates, for all contemporary percutaneous coronary interventions for interventional/therapeutic procedures performed by Joseph Surmitis, M.D. at Mercy/Aultman's Main Campus Facility Catheterization Lab, by percentage relative to myocardial infarction.

3. The number of contemporary percutaneous coronary interventions for diagnostic procedures performed by Joseph M. Surmitis, M.D. at

Mercy/Aultman's Main Campus Facility Catheterization Lab from January 1, 2010 to the present.

4. The number of contemporary percutaneous coronary interventions for interventional/therapeutic procedures performed by Joseph M. Surmitis, M.D. at Mercy/Aultman's Main Campus Facility Catheterization Lab from January 1, 2010 to the present.

**{¶10}** Evidence was discovered by Brahm that Affinity's catheterization lab recorded and maintained statistics relative to procedural volume and outcome within the lab and that this information was provided to a number of entities, including the American College of Cardiology "Cath PCI data registry." Because these statistics were provided to the ACC, Brahm issued a subpoena to ACC to confirm whatever information was provided to it by Affinity, Mercy, or Aultman.

**{¶11}** Each medical entity filed motions for a Protective Order and/or to Quash Subpoenas, claiming the items Brahm sought to discover are privileged peer review information barred from disclosure by R.C. 2305.252.

**{¶12}** By judgment entry of August 28, 2015, the court denied Aultman Hospital's motion as to the second two categories of documents, referring to those as "raw data" records, and directing Aultman Hospital to produce them to Brahm. As to the "complication rate" records (the first two categories in the list above), the court ordered Aultman Hospital to produce those by September 10, 2015 for in-camera inspection where the court would determine "whether the documents are privileged in whole or in part .... " (Judgment Entry, p.9.) Specifically the trial court ordered,

The Health Care Entities to produce the disputed material for in camera review. At this juncture, it must be determined whether the records consist of material addressing the specific care or treatment rendered to particular patients or whether they are merely summaries of the patients that were discussed without addressing the care and treatment rendered to particular patients.

Judgment Entry, filed Aug. 28, 2015 at 9. In arriving at this conclusion, the trial court noted,

In the case at bar, it is not clear on the face of the disputed discovery requests that all of the documents requested by Plaintiffs are subject to the peer review privilege. Therefore, defendants have the burden of proving that the requested documents were privileged. An in camera inspection is the best way for the Court to decide whether the privilege applies and to protect the record for review.

Id. at 7.

{¶13} On September 10, 2015, Aultman Hospital filed a statement with the court on its partial performance of the court's order to produce information on the number of percutaneous coronary interventions for diagnostic and for therapeutic purposes. It explained that the information was maintained in the form described in the subpoena only in the peer review and quality assurance processes. Aultman Hospital explained, however, that it could extract from its financial information the total number of percutaneous coronary interventions performed by Dr. Surmitis, but was incapable of separating within that information the therapeutic and diagnostic procedures, as

described in the subpoena. Aultman Hospital said it would produce information on the total number of procedures that it could extract from its financial records, but that it was appealing the order to produce the peer review and quality assurance records that could distinguish between therapeutic and diagnostic procedures.[1]

*Assignment of Error*

{¶14} Aultman Hospital raises one assignment of error,

{¶15} "I. UNDER R.C. 2305.252, RECORDS WITHIN THE SCOPE OF A HOSPITAL'S PEER REVIEW COMMITTEE ARE NOT DISCOVERABLE IN ANY CIVIL ACTION AGAINST A HEALTH CARE PROVIDER ARISING OUT OF MATTERS THAT ARE THE SUBJECT OF EVALUATION AND REVIEW BY THE PEER REVIEW COMMITTEE. R.C. 2305.24 PROVIDES THAT RECORDS OF HOSPITAL QUALITY ASSURANCE COMMITTEES ARE ALSO CONFIDENTIAL. DID THE TRIAL COURT ERR IN ORDERING AULTMAN HOSPITAL TO PRODUCE MATERIALS FROM ITS PEER REVIEW AND QUALITY ASSURANCE DEPARTMENTS IN A CIVIL ACTION ARISING OUT OF MATTERS THAT WERE THE SUBJECT OF THE COMMITTEES' EVALUATION AND REVIEW?"

---

[1] Each of the medical entities have appealed the August 28, 2015 Judgment Entry ordering the production of documents for an in camera inspection by the trial court to determine whether the documents are privileged or discoverable in whole or in part by Brahm. See, *Brahm v. DHSC, LLC, dba Affinity Medical Center, et al.* 5th Dist. No. 2015CA00171 [**Affinity Medical Center**]; *Brahm v. DHSC, LLC, dba Affinity Medical Center, et al.* 5th Dist. No. 2015CA00172 [**Mercy Medical Center**]; *Brahm v. DHSC, LLC, dba Affinity Medical Center, et al.* 5th Dist. No. 2015CA0079 [**American College of Cardiology**].

*Analysis*

*Jurisdiction of the Court of Appeals*

**{¶16}** In the case at bar, we must address the threshold issue of whether the judgment appealed is a final, appealable order. Appellee filed a motion to dismiss on October 8, 2015 raising an issue that the appeal herein is not from a final appealable order. Appellee again raises the issue in its merit brief filed December 9, 2015.

**{¶17}** Even if a party does not raise the issue, this court must address, sua sponte, whether there is a final appealable order ripe for review. *State ex rel. White vs. Cuyahoga Metro. Hous. Aut.*, 79 Ohio St.3d 543, 544, 1997-Ohio-366, 684 N.E.2d 72.

**{¶18}** Appellate courts have jurisdiction to review the final orders or judgments of lower courts within their appellate districts. Section 3(B) (2), Article IV, Ohio Constitution. If a lower court's order is not final, then an appellate court does not have jurisdiction to review the matter and the matter must be dismissed. *General Acc. Ins. Co. vs. Insurance of North America,* 44 Ohio St.3d 17, 20, 540 N.E.2d 266(1989); *Harris v. Conrad*, 12th Dist. Warren No. CA-2001-12 108, 2002-Ohio-3885. For a judgment to be final and appealable, it must satisfy the requirements of R.C. 2505.02 and if applicable, Civ. R. 54(B). *Denham v. New Carlisle*, 86 Ohio St.3d 594, 596, 716 N.E.2d 184 (1999); *Ferraro v. B.F. Goodrich Co.*, 149 Ohio App.3d 301, 2002-Ohio-4398, 777 N.E.2d 282(9th Dist.). If an order is not final and appealable, an appellate court has no jurisdiction to review the matter and it must be dismissed.

**{¶19}** A proceeding for "discovery of privileged matter" is a "provisional remedy" within the meaning of R.C. 2505.02(A)(3). *Smith v. Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633. An order granting or denying a provisional remedy is

final and appealable only if it has the effect of "determining the action with respect to the provisional remedy and preventing a judgment in the action in favor of the appealing party with respect to the provisional remedy" and "the appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." *Chen* at ¶*5;* R.C. 2505.02(B)(4). The burden "falls on the party who knocks on the courthouse doors asking for interlocutory relief." *Chen at* ¶8. As specifically noted by the Ohio Supreme Court, "an order must meet the requirements in both subsections of the provisional-remedy section of the definition of final, appealable order in order to maintain an appeal." Id.

{¶20} If the party seeking to appeal fails to establish why an immediate appeal is necessary, the court must presume an appeal in the ordinary course would be meaningful and effective. Id. However, "an order compelling disclosure of privileged material that would truly render a post judgment appeal meaningless or ineffective may still be considered on an immediate appeal." Id.

{¶21} In this case, appellant argues there is a final appealable order under R.C. 2505.02(A)(3) and (B)(4)(b) because it requires the discovery of privileged matter, and thereby grants a provisional remedy for which there would be no meaningful effective remedy on subsequent appeal. Appellant maintains the trial court abused its discretion in denying their request for a protective order and motion to quash, and in ordering the production of what appellant believes qualify as peer review and quality assurance records for an in-camera inspection. Appellant alleges that because the order encompasses what it alleges are peer review records, it is a final, appealable order pursuant to R.C. 2305.252. R.C. 2305.252 states that "* * *An order by a court to produce

for discovery or for use at trial the proceedings or records described in this section [i.e. peer review records] is a final order."  Appellee argues that a trial court's order for an in camera inspection of certain documents, rather than an order to provide documents to the adverse party, is a non-final order.  We agree with the appellee.

{¶22}  Appellant cites *Huntsman v. Aultman Hospital,* 160 Ohio App.3d 196, 2005-Ohio-1482, 826 N.E.2d 384["*Huntsman I*"] for the proposition that an in camera review is not permitted[2],

> Further, in this particular situation, the change to the statute is clearly procedural. The change in the statute that is relevant in this case pertains to the Ohio legislature's apparent decision to foreclose a party from obtaining any information, documents, or records from the peer review committee's records.  Previously, courts had interpreted the prior version of the statute (R.C. 2305.251) to allow a trial court to conduct an in camera review of the peer review committee's records to determine whether the privilege applied to individual documents.  *If the record was available from its origin source, it was not privileged and could be obtained from the peer review committee's records.  See, e.g., Doe v. Mount Carmel Health Systems, Franklin* App. No. 03AP–413, 2004-Ohio-1407, 2004 WL 557333. The current version of the statute makes it clear that there is no need for an in camera inspection because no documents can be obtained from the peer review committee records, only from the records of the original source of the information.  We view this relevant revision to be a clarification of the

---

[2] *Brief of Appellant Aultman Hospital*, filed Nov. 2, 2015 at 8.

statute's intent. Since this change affects only how information is to be obtained, we find the change to be procedural.

*Huntsman I, 160* Ohio App.3d at 200-201, 2005-Ohio-1482, 826 N.E.2d 384, ¶20. [Emphasis added]. However, *Huntsman I* stands for the proposition that the statute prevents a court from requiring a facility to provide a list of documents that could be found from other, original sources, utilizing a peer review committee document to do so. In other words, a facility cannot be forced to divulge the information contained in a peer review committee file. *Large v. Heartland-Lansing of Bridgeport Ohio, LLC,* 7th Dist. Belmont No. 12 BE 7, 2013-Ohio-2877, 995 N.E.2d 872, ¶43.

**{¶23}** *Huntsman I* is factually distinguishable from the instant case. In *Huntsman I*, the plaintiff sought documents that were contained in the hospital's credentialing and peer-review files, whereas here, the trial court found that it could not determine from the face of the disputed discovery requests that all of the documents requested by Brahm are subject to the peer review privilege. *See, also, Manley v. Heather Hill, Inc.,* 175 Ohio App.3d 155, 2007-Ohio-6944, 885 N.E.2d 971(11th Dist.), ¶34. We find that whether or not the requested records fall within the purview of the peer review privilege is a decision best determined by an in camera review of the documents the appellee is requesting and over which appellant is asserting privilege. *Bailey v. Manor Care of Mayfield Hts.,* 8th Dist. No. 99798, 2013-Ohio-4927, 4 N.E.3d 1071, ¶37.

**{¶24}** As this Court has noted,

Nothing in R.C. 2305.252 sets forth a right to privacy. Furthermore, the protection of the free flow of information into a peer review process will not be compromised by an in camera review. A private review, prior to any order for

the production of documents to an adverse party, by a competent judge who is sworn to maintain confidentiality does not compromise the free flow of information that the privilege is meant to protect.

*Huntsman v. Aultman Hospital,* 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, ¶88. ["*Huntsman II*"] In *Huntsman II,* this Court further noted,

> The documents subject to the court's order in the case sub judice are not as homogeneous in nature. In other words, the trial court in the case sub judice could issue different rulings regarding the peer review privilege as to each document presented.

5th Dist. Stark No. 2006 CA 00331, 2008-Ohio-2554, ¶89. This Court concluded, that the trial court's order requiring various insurance companies, the Bureau of Workers' Compensation, Medicare, Medicaid, Aultcare HMO, and others to produce documents to the trial court for an in camera inspection, is not a final, appealable order. Id. at ¶90.

**{¶25}** Despite appellant's contention, the trial court's judgment entry does not order the release of any documents; rather the trial court itself will review the documents. The issue of whether or not any document is discoverable has not yet been determined by the trial court. The trial court's order does not appear to exclude the possibility that the trial court will review the documents to determine whether each is protected by the peer review privilege in R.C. 2305.252. The trial court has retained jurisdiction to make further determinations regarding the discoverability of the requested materials. *Huntsman II* at ¶81.

**{¶26}** In the case at bar, we find that the trial court's entry ordering an in-camera inspection of the documents is not a final appealable order.

{¶27} Because there is no final appealable order, this court does not have jurisdiction to entertain appellant's appeal.

{¶28} For the foregoing reasons, Aultman Hospital's appeal of the August 28, 2015 Judgment Entry of the Stark County Court of Common Pleas, Stark County, Ohio, is hereby dismissed.

{¶29} IT IS SO ORDERED.


By Gwin, J., and

Delaney, J. concur;

Farmer, P.J., dissents

*Farmer, P.J., dissents*

{¶30} I respectfully dissent from the majority opinion that the discovery order sub judice is not a final appealable order.

{¶31} I acknowledge in *Smith v. Chen,* 142 Ohio St.3d 411, 2015-Ohio-148, Justice O'Neill refined our scope of final appealable orders. Under R.C. 2305.252 and its specific language, "[p]roceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery***."

{¶32} As we addressed in *Huntsman I,* a parallel situation, even an in camera review is violative of the statute. *Huntsman I,* 160 Ohio App.3d 196, 2005-Ohio-1482, at ¶ 20. I find the majority's reliance on *Huntsman II,* 5th Dist. Stark No. 2006 CA 00331, 2008-Ohio-2554, to be misplaced. *Huntsman II* involved information and sources independent of the records and proceedings of the peer review committee. The statute specifically permits discovery of information, documents, or records obtainable from original sources. The matters sought to be discovered in *Huntsman II* were records from insurance companies and other original sources.

{¶33} Because the trial court's order for in camera review is per se violative of the plain meaning of the statute, I would find the matter is a final appealable order as it resolves the issue and breaches the statutory confidentiality of records.