[Cite as *Bautista v. Kettering Health*, 2025-Ohio-674.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| MELISSA BAUTISTA ET AL. | : | |
| Appellees | : | C.A. No. 30219 |
| v. | : | Trial Court Case No. 2022 CV 04144 |
| KETTERING HEALTH ET AL. | : | (Civil Appeal from Common Pleas Court) |
| Appellant | : | |

. . . . . . . . . .

O P I N I O N

Rendered on February 28, 2025

. . . . . . . . . .

GREGORY B. FOLIANO, FREDERICK A. SEWARDS, & JOHN B. WELCH, Attorneys for Appellant

PATRICK J. BEIRNE, JILL GUSTAFSON, & LOGAN E. ENGLISH, Attorneys for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Defendant-Appellant Kettering Health appeals from an order of the Montgomery County Court of Common Pleas which (1) overruled Kettering's "Motion for Reconsideration of Order Directing Kettering to File Affidavit No Later Than December

11, 2023" and (2) ordered that the credentialing files of Dr. Stuart Weprin and Dr. Emily Kimble be produced and turned over to Plaintiffs-Appellees Melissa Bautista and Matthew Birdsall. For the reasons that follow, the order of the trial court will be reversed, and the case will be remanded for further proceedings.

## I.      Facts and Procedural History

{¶ 2} In November 2012, Sophia Birdsall was born at Kettering Medical Center's main campus to Melissa Bautista and Matthew Birdsall. According to the Appellees' complaint, it is alleged that Kettering and Drs. Weprin and Kimble negligently mismanaged Sophia's birth and, as a result, she suffered a brain injury. Dr. Weprin had examined Bautista and performed a cesarean section, and Dr. Kimble had been her treating OB-GYN.

{¶ 3} Almost ten years after Sophia's birth, Bautista and Birdsall filed suit, alleging that the negligence of multiple parties had caused their daughter's injuries. The final amended complaint was filed on March 8, 2023.

{¶ 4} Since its 2022 inception, this suit has been fraught with discovery disputes, including the one at the center of this appeal – the question of whether the credentialing files of the doctors must be turned over to the plaintiffs. Kettering objected to the request for the files, arguing that there was no claim for negligent credentialing, so those files were irrelevant, and that they were privileged under Ohio's peer review statute, R.C. 2305.25 et seq. Kettering reasoned that, because the credentialing committee is a peer review committee, the credentialing files are privileged.

{¶ 5} When Bautista and Birdsall did not receive discovery responses they

believed should have been provided, they filed a motion to compel on May 24, 2023. Following a phone conference in late June, the trial court gave Kettering until July 14 to provide "all requested discovery." The day before the deadline, Kettering served responses (which Bautista and Birdsall thought were incomplete) and asserted peer review privilege with respect to the credentialing files. It appears, though, that Kettering never verified that the documents it claimed to be privileged actually were, and thus, the trial court set December 11 as the deadline for Kettering to file an affidavit in support of its claim of privilege. Kettering missed the deadline. Bautista and Birdsall asked the court to enforce their motion to compel. On December 18, 2023, without first determining whether the files were confidential or privileged under R.C. 2305.252, as a sanction for a discovery violation, the trial court simply ordered Kettering to produce the credentialing files within 14 days. The court did not provide the parties with notice that the December 18 order was a final appealable order, and Kettering did not appeal from it.

{¶ 6} The next day, December 19, 2023, Kettering filed an affidavit from Mandy Addison, Director of Medical Staff Services, which had been executed on December 13. According to Kettering, the affidavit provided the required support for its privilege claim under R.C. 2305.252(A). Kettering also filed a motion for reconsideration of the order to produce the credentialing files. It argued that it had been unable to timely obtain the affidavit because Kettering is a "large medical center that is focused on patient care rather than legal-administrative duties, particularly during the busy holiday season." The trial court stayed the order of production, it re-cast the request as a Civ.R. 60(B) motion, the parties briefed the issues, and in April 2024, a hearing was held.

**{¶ 7}** At the hearing, Kettering made two arguments. First, it claimed that its failure to file the requisite affidavit in a timely manner was excusable neglect under Civ.R. 60(B)(1), as it had experienced difficulties obtaining the affidavit during December and it took counsel time to put it together and get it signed. Kettering claimed that the peer review privilege issue is uncommon, so it took time to address. Kettering's counsel acknowledged that an extension should have been requested and that the trial court should consider its "ineptitude." Kettering also asserted that it was entitled to relief under Civ.R. 60(B)(5)'s "catch-all provision" as the doctors were not to blame for the tardy affidavit and would be prejudiced if the credentialing files were released.

**{¶ 8}** On July 11, 2024, the trial court issued its decision on Kettering's re-cast motion for reconsideration. It found that Kettering had not met the Civ.R. 60(B)(1) standard, because it had not shown that its negligence in failing to file the affidavit on time was "excusable neglect." Similarly, it found that Kettering had not satisfied the Civ.R. 60(B)(5) standard, because Kettering did not have standing to raise the issue of prejudice on behalf of the doctors and there was no evidence of "inexcusable neglect" on the part of Kettering's attorneys. Ultimately, the trial court denied Kettering request for relief from its order directing the production of the alleged privileged documents and ordered that the documents be turned over within 13 days.

**{¶ 9}** Kettering filed a timely appeal from this order.

## II.     Civ.R. 60(B) and Privilege

**{¶ 10}** In its lone assignment of error, Kettering argues that the trial court erred when it ordered the production of the "privileged credentialing files of Dr. Kimble and Dr.

Weprin in violation of the peer review privilege, R.C. 2305.252(A)." Appellant's Brief at 3. The parents, on the other hand, contend that the forced production was a necessary sanction after Kettering repeatedly refused to comply with discovery timelines.

{¶ 11} Because Kettering appeals from the trial court's denial of its "motion for reconsideration of order directing Kettering to file affidavit no later than December 11, 2023," which was correctly re-cast as a Civ.R. 60(B) motion (*see Genhart v. David*, 2011-Ohio-6732, ¶ 12 (7th Dist)), we first must address that issue, particularly in light of R.C. 2305.252, which relates to the confidentiality of peer review committee proceedings and records and provides that "(a)n order by a court to produce for discovery or for use at trial the proceedings or records" that are privileged is a final order.

{¶ 12} Civ.R. 60(B) provides that a trial court may relieve a party from a final judgment, order, or proceeding due to: (1) mistake, inadvertence, surprise, or excusable neglect . . . or (5) any other reason justifying relief from judgment. Civ.R. 60(B). The decision to grant or deny a Civ.R. 60(B) motion is left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *In re Adoption of A.J.W.*, 2023-Ohio-2609, ¶ 15 (2d Dist.).

{¶ 13} A discovery order requiring the production of privileged information under R.C. 2305.252 is a final appealable order because such an order would require the disclosure of confidential or privileged information and, if the information were disseminated, the party claiming the privilege would have no effective remedy if forced to delay appeal until after a final judgment in the suit. *Dineen v. Pelfrey,* 2022-Ohio-2035, ¶ 17 (10th Dist.); *Brahm v. DHSC, LLC,* 2016-Ohio-1207, ¶ 19 (5th Dist.). Until such time

as a court has determined that requested discovery is privileged under R.C. 2305.252, though, no final appealable order has been rendered. *See Brahm* at ¶ 26-27.

{¶ 14} While we harbor serious doubts that an order issued under R.C. 2305.252 is the type of final order contemplated for Civ.R. 60(B) analysis, we need not address that issue, as the trial court did not make a finding regarding the privileged nature of the peer credentialing files prior to its Civ.R.60(B) determination, that would qualify as a final order. Instead, as a result of the denial of the motion, and as a sanction for not complying with the previous order(s), the court required that the doctors' credentialing files be turned over to opposing counsel. Although trial courts have considerable latitude in crafting sanctions for discovery violations (*see* Civ.R. 37), that discretion is not unlimited and would exclude measures such as ordering the production of privileged documents. *See Beck v. First Fin. Ins. Co.*, 2006-Ohio-3463 (12th Dist.) (holding that the trial court erred by ordering the waiver of attorney-client privilege as a sanction for discovery violations). The sanctions available for a discovery violation do not include an order to produce privileged materials. *Bennett v. Martin*, 2009-Ohio-6195, ¶ 47 (10th Dist.) (even when misconduct occurs in discovery, the court must protect the defendant's privileged information).

{¶ 15} Here, Kettering asserts that the credentialing files of Drs. Weprin and Kimble fall under the category of peer review privilege and, thus, it cannot be compelled to produce the files. According to R.C. 2305.252(A), "[p]roceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider[.]" A hospital's credentialing committee is a peer

review committee; thus, its activities fall under the peer review privilege as outlined in R.C. 2305.252. R.C. 2305.25(E)(1)(a); *Spurgeon v. Mercy Health-Anderson Hosp., LLC*, 2020-Ohio-3099, ¶ 13 (1st Dist.).

**{¶ 16}** "There are two general categories of documents that are considered records within the scope of the peer-review committee. First, any documents that are generated by or exclusively for the peer-review committee are protected from disclosure." *Spurgeon* at ¶14. "Second, any documents that are maintained in the peer review committee's records that were generated by an 'original source,' a source other than the peer review committee itself, and then presented to a peer review committee are protected from disclosure." *Sexton v. Healthcare Facility Mgmt. LLC*, 2022-Ohio-2376, ¶ 9 (2d Dist.).

**{¶ 17}** "R.C. 2305.252 manifests the legislature's clear intent to provide a complete shield to the discovery of any information used in the course of a peer review committee's proceedings." *Tenan v. Huston*, 2006-Ohio-131, ¶ 23 (11th Dist.).

**{¶ 18}** There is nothing in the record that indicates that the trial court, prior to ordering the disclosure, ever determined whether the credentialing files of Drs. Weprin and Kimble were in fact privileged; the court simply instructed that the files be given to Bautista and Birdsall within 13 days of the order as a discovery sanction. Because these documents were potentially privileged, the trial court was required to affirmatively decide if they were protected by R.C. 2305.252(A) before ordering that the documents be produced, which could then result in a final appealable order. Generally, a determination of whether documents are privileged results from an in camera inspection of the

documents, as a decision as to whether information is privileged cannot be made without reviewing the information claimed to be privileged. If found to be privileged, the court may not order Kettering to produce the files. This is not to say that the court cannot fashion other appropriate sanctions against an offending party, but "all documents within a peer review committee's own records – regardless of the source – are absolutely immune from discovery in any civil action." *Cousino v. Mercy St. Vincent Med. Ctr.*, 2018-Ohio-1550, ¶ 25 (6th Dist.).

**{¶ 19}** Though we do not address the argument that the trial court erred in overruling the Civ.R. 60(B) motion because no final order, whether contemplated under R.C. 2305.252 or Civ.R. 60(B), was issued, Kettering's assignment of error is sustained because the trial court erred in ordering the production of the credentialing files without determining if they are privileged.

### III.    Conclusion

**{¶ 20}** The judgment of the trial court will be reversed and the matter remanded for further proceedings, including a determination of whether the credentialing files of Drs. Weprin and Kimble are privileged.

. . . . . . . . . . . .


LEWIS, J. concurs.

EPLEY, P.J., dissents:

**{¶ 21}** Although I agree with the general principle that privileged documents are not discoverable, I respectfully dissent from the majority opinion. A motion for

reconsideration after a final order in the trial court is a nullity. *See Payne v. Wilberforce Univ.*, 2004-Ohio-4055, ¶ 7 (2d Dist.); *Genhart*, 2011-Ohio-6737, ¶ 12 (7th Dist.).   The fact that the trial court's December 18 order, according to the statute and caselaw, was final (and appealable) means that a motion for reconsideration was not appropriate; "[t]he Ohio Rules of Civil Procedure do not prescribe motions for reconsideration after a final judgment in the trial court." *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378 (1981), paragraph one of the syllabus.

{¶ 22} In its assignment of error, Kettering argues that the trial court erred when it ordered the production of the "privileged credentialing files of Dr. Kimble and Dr. Weprin in violation of the peer review privilege, R.C. 2305.252(A)." Appellant's Brief at 3. The plaintiffs, on the other hand, contend that the forced production was a necessary sanction after Kettering repeatedly refused to comply with discovery timelines. Before there can be any discussion about whether the documents were privileged, there are procedural questions to answer, including whether Kettering's motion for reconsideration was the proper vehicle to challenge the trial court's December 18, 2023 order to turn over the credentialing files and whether Kettering's failure to appeal the trial court's final order foreclosed its ability to protest the order to disclose potentially privileged documents.

{¶ 23} Our initial step is to examine the peer review privilege statute. R.C. 2305.252(A) states that:

> Proceedings and records within the scope of a peer review committee of a
> health care entity shall be held in confidence and shall not be subject to
> discovery or introduction in evidence in any civil action against a health care

entity or health care provider . . . arising out of matters that are the subject of evaluation and review by the peer review committee. . . . ***An order by a court to produce for discovery or for use at trial the proceedings or records described in this section is a final order***.

(Emphasis added). The statute indicates that an order such as the one at bar is final.

{¶ 24} There is also a policy argument as to why an order to turn over potentially privileged documents is a final order; once the documents are revealed, "the bell will have rung," and if the documents contained privileged information, Kettering would have no adequate remedy on appeal. *See Ryan v. State Farm Mut. Auto. Ins. Co.*, 2023-Ohio-3731, ¶ 20 (2d Dist.); *Schottenstein, Zox & Dunn v. McKibben*, 2002-Ohio-5075, ¶ 19 (10th Dist.); *Schram v. Masadeh*, 2024-Ohio-1662, ¶ 34. In its December 18, 2023 order, the trial court found " . . . that KMC has failed to establish its claim of peer-review privilege."

{¶ 25} The most obvious solution is for the aggrieved party to appeal from the order to compel. *See Giusi v. Akron Gen. Med. Ctr.*, 2008-Ohio-4333, ¶ 7 (9th Dist.) ("As the hospital has made a claim of privilege, that part of the order is final and appealable under R.C. 2305.252."); *Smith v. Manor Care of Canton, Inc.*, 2006-Ohio-1182, ¶ 40 (5th Dist.) (when an order to produce records is made pursuant to R.C. 2305.252, that order is a final appealable order). That did not happen in this case, though we note that the trial court's order lacked any mention of Civ.R. 54 or R.C. 2505.02.

{¶ 26} The other route available for the trial court (as the parents argued in their response to Kettering's motion for reconsideration and which the court adopted in its July

11, 2024 final judgment) was to re-cast the nullity that is the motion for reconsideration as a Civ.R. 60(B) motion for relief from judgment.

{¶ 27} According to Civ.R. 60(B), a trial court may relieve a party from a **final** *judgment,* ***order,*** *or proceeding* for several reasons, including, as pertinent to this case, (1) mistake, inadvertence, surprise, or excusable neglect . . . or (5) any other reason justifying relief from judgment. Civ.R. 60(B). (Emphasis added). R.C. 2305.252(A) clearly states that an order by a court to produce privileged material for discovery is a final order, so it would follow, then, that Civ.R. 60(B) could grant relief from the trial court's order to turn over the credentialing files. That outcome has been endorsed by at least one other Court as well. In *Smith* 2006-Ohio-1182 (5th Dist.), the defendant appealed from an order denying reconsideration of an order compelling disclosure of privileged material under R.C. 2305.252. The Fifth District noted that it had "no jurisdiction to review the motion for reconsideration" because the "Civil Rules do not provide for a motion for reconsideration of a final appealable order." *Id.* at ¶ 41-42. But the court determined that it *did* have jurisdiction to review Civ.R. 60(B) motions.

{¶ 28} Finally, it is well-established that "[c]ourts may recast irregular motions into whatever category necessary to identify and establish the criteria by which the motion should be judged." *State v. Schlee*, 2008-Ohio-535, ¶ 12.

{¶ 29} Based on the foregoing, I would find that the trial court did not err when it re-cast Kettering's motion for reconsideration as a Civ.R. 60(B) motion for relief from judgment. I would further find that the trial court's rigorous analysis of the Civ.R. 60(B) motion was correct and affirm the trial court's decision.